*Wilfredo Rosales v. State of Maryland*, No. 6, September Term, 2018.  Opinion by Getty, J.

**APPEAL AND ERROR—EFFECT OF DELAY OR FAILURE TO TAKE PROCEEDINGS**

Maryland Rule 8-202, which requires that a notice of appeal shall be filed within thirty days after entry of the final judgment is a claim-processing rule, not jurisdictional. Therefore, the ground for dismissal of an untimely appeal is not jurisdictional, but is for failure to comply with the Maryland Rules.  The Rule is also subject to waiver and forfeiture.

**EVIDENCE—IMPEACHMENT BY PRIOR CONVICTION—PRIOR CRIMES, WRONGS OR ACTS**

Pursuant to Maryland Rule 5-609, a witness' prior convictions under Violent Crimes in Aid of Racketeering Activity, 18 U.S.C. § 1959 are admissible for witness impeachment. VICAR convictions involve criminal acts that are relevant to a witness' credibility. Therefore, the convictions are admissible for purposes of witness impeachment.

IN THE COURT OF APPEALS
OF MARYLAND

No. 6

September Term, 2018

---

WILFREDO ROSALES

v.

STATE OF MARYLAND

---

Barbera, C.J.
Greene,
*Adkins,
McDonald,
Watts,
Hotten,
Getty,

JJ.

---

Opinion by Getty, J.

---

Filed: April 17, 2019

*Adkins, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the MD. Constitution, Article IV, Section 3A, she also participated in the decision and adoption of this opinion.

Pursuant to Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In this case we are asked to determine whether a witness' prior convictions for committing a violent crime in aid of racketeering in violation of 18 U.S.C. § 1959 ("VICAR offenses") are admissible for witness impeachment under Maryland Rule 5-609. Specifically, the Defendant sought to impeach the State's witness with the witness' conviction of conspiracy to commit assault with a dangerous weapon in aid of racketeering and threatening to commit a crime of violence in aid of racketeering. We hold that a witness' prior convictions for VICAR offenses are admissible for witness impeachment. Convictions for VICAR offenses cross the conceptual dividing line between crimes involving the basic level of dishonesty required to commit any crime and those characterized by inherent deceitfulness, furtive conduct, and disregard for societal cohesiveness. Individuals who choose to involve themselves with an enterprise engaged in racketeering activity and who choose to commit or conspire to commit violent acts with the express purpose of aiding such an enterprise are also likely willing to lie under oath, as judged by our standard outlined in *State v. Giddens*, 335 Md. 205 (1994).

The trial court erred in excluding the witness' prior convictions for impeachment purposes at trial. However, we hold further that the exclusion of these convictions was harmless beyond a reasonable doubt. Therefore, the Court of Special Appeals' affirmation of the trial court's exclusion of the convictions is reversed, but Mr. Rosales is not granted a new trial.

After we granted certiorari, the State raised for the first time the issue of jurisdiction and contended that this Court did not have jurisdiction to reach the merits. As a result, we also address this Court's jurisdiction and review our prior classification of Maryland Rule

8-202 as a "jurisdictional" rule that required immediate dismissal of an appeal for lack of jurisdiction.

For the following reasons, we determine that this Court has jurisdiction to reach the merits. Although in the past this Court has considered the thirty-day time limitation for noticing an appeal within Maryland Rule 8-202 as "jurisdictional," that deadline is based on a rule and not on a statute. Therefore, the basis for dismissal for failure to file a notice of an appeal within thirty days is not lack of jurisdiction, but failure to comply with the Maryland Rules. Furthermore, appellate courts must also consider waiver and forfeiture before dismissing an appeal. As explained in detail below, jurisdiction in this case is consistent with Maryland Rule 8-202.

## BACKGROUND

### A. *Underlying Facts*

This case involves an encounter between a former member of the Mara Salvatrucha ("MS-13") gang, Hector Hernandez-Melendez ("Mr. Hernandez-Melendez"), a.k.a. "Scrappy," and a group of current MS-13 members. Mr. Hernandez-Melendez was walking to his girlfriend's home on September 26, 2012 at about 7:00 p.m. through the Langley Hampshire Neighborhood Park in Langley Park, Prince George's County, Maryland. While Mr. Hernandez-Melendez was resting on a swing, Wilfredo Rosales ("Mr. Rosales") and six other men approached Mr. Hernandez-Melendez and asked if he was Scrappy. Mr. Hernandez-Melendez said no. The group then asked Mr. Hernandez-Melendez to lift his shirt. When Mr. Hernandez-Melendez refused, he was thrown to the ground and stabbed by someone in the group.

2

An ambulance transported Mr. Hernandez-Melendez to Washington Hospital Center. After Mr. Hernandez-Melendez received care for his injuries, detectives arrived and questioned him. He told the detectives that he did not recognize any of his attackers except for Mr. Rosales. He knew Mr. Rosales did not stab him but he believed that Mr. Rosales removed $150 from his wallet. He also believed Mr. Rosales was the instigator of the attack because Mr. Rosales was the only one in the group who would have recognized Mr. Hernandez-Melendez.

According to Mr. Hernandez-Melendez, he "walk[ed] through" Mr. Rosales in 2006.[1] However, after that encounter and prior to the incident in the park, Mr. Hernandez-Melendez had not had any contact with Mr. Rosales since 2006. Mr. Hernandez-Melendez confirmed the identity of Mr. Rosales through photo identification. Based upon this identification, Mr. Rosales was arrested.

### B.    The Trial

The State charged Mr. Rosales with nine counts related to the assault of Mr. Hernandez-Melendez. On May 30, 2013, a jury trial began in the Circuit Court for Prince

---

[1] "Walking through" is the description Mr. Hernandez-Melendez gave to the process of entering MS-13. During the "walking through" period, an individual is not yet a full member of MS-13. An individual is inducted as a full MS-13 member after they are "jumped in." Mr. Hernandez-Melendez testified that Mr. Rosales was "walking through" for a period of approximately four months before they lost contact. Mr. Hernandez-Melendez was not in contact with Mr. Rosales when Mr. Rosales allegedly "jumped in," gaining full membership into MS-13. Sergeant Norris, who was accepted as an expert at trial to testify about MS-13 stated the following pertaining to "jumping in": "A jump-in is basically you're beaten. It's called a 13 or you're beaten for 13 seconds. And when they do this, thirteen seconds isn't by a stopwatch. It's whoever's counting. We've timed them going up to over a minute and a half to become a member."

George's County and Mr. Hernandez-Melendez testified in the State's case. During direct examination, Mr. Hernandez-Melendez testified about his prior experience as a member of MS-13. He stated that in his opinion, he was attacked as retaliation for testifying as a government witness against three MS-13 members in a federal homicide trial in Washington, D.C. in 2009.

Prior to Mr. Rosales' cross-examination of Mr. Hernandez-Melendez, the trial court heard argument on the State's motion *in limine* to preclude Mr. Rosales from questioning Mr. Hernandez-Melendez about his 2011 conviction in the United States District Court for the District of Columbia for conspiracy to commit assault with a dangerous weapon in aid of racketeering and threatening to commit a crime of violence in aid of racketeering in violation of the federal statute, Violent Crimes in Aid of Racketeering Activity ("VICAR"), 18 U.S.C. § 1959. The State asked the trial court to prohibit admission of the convictions under Maryland Rule 5-609. The State argued that these were convictions that could not be used to impeach his credibility, contending that these crimes were neither infamous crimes nor crimes relevant to credibility. Mr. Rosales argued that these offenses were impeachable because they were relevant to credibility and were different from other crimes of violence. The trial court granted the State's motion and ruled, "we are going to exclude any reference to his conviction, and we are going to exclude any questions as to what he was in jail for."

After the conclusion of the trial, the jury deliberated and found Mr. Rosales guilty of two of the nine counts—retaliation against a witness and participation in a criminal gang. On June 26, 2013, the trial court sentenced Mr. Rosales to twelve years of imprisonment

4

with six years suspended on the conviction for retaliation against a witness and a consecutive sentence of ten years with five years suspended on the conviction for participation in a criminal gang.

## C. Post-Trial Proceedings

Mr. Rosales filed an initial notice of appeal on October 16, 2013 and a motion to permit a notice of appeal past the filing date. The circuit court granted the motion. The initial appeal was docketed in the Court of Special Appeals as No. 1835, September Term 2013. Mr. Rosales voluntarily dismissed this appeal in October 2014.

On September 27, 2016, Mr. Rosales filed a Petition for Postconviction Relief. Among other allegations, Mr. Rosales alleged ineffective assistance of his trial counsel because he had requested that trial counsel file an appeal and trial counsel did not timely file the appeal. A hearing on the petition was scheduled for February 1, 2017. Prior to the start of the hearing, the State agreed that Mr. Rosales was entitled to file a belated appeal. During the hearing, the State and Mr. Rosales briefly went on the record to inform the postconviction court that they had reached an agreement. Specifically, the State said:

> Your Honor, in this case, trial counsel filed a notice of appeal past the filing date, and then tried to get it recognized. . . which he wasn't able to do. We are willing to—I think it's the right thing to grant a belated appeal, and to hold the rest of the post-conviction issues in abeyance for Mr. Rosales.

The postconviction court agreed to sign the proposed consent order, and the order was docketed. The consent order authorized a belated notice of appeal and ordered that the postconviction petition be withdrawn without prejudice. In the consent order, Mr. Rosales was permitted to re-file a petition "after the appellate process is concluded, provided the

5

filing occurs within ten (10) years from [the] original sentencing date." Mr. Rosales subsequently filed the belated appeal.

In an unreported opinion filed on December 11, 2017, the Court of Special Appeals affirmed the judgment of the trial court, holding that the trial court properly concluded that Mr. Hernandez-Melendez's prior convictions involved violent crimes that were not relevant to credibility and were non-impeachable crimes under Maryland Rule 5-609. *Rosales v. State*, No. 2659, Sept. Term, 2016, 2017 WL 6312861, at *8 (Md. Ct. Spec. App. Dec. 11, 2017). Regarding jurisdiction, the Court of Special Appeals noted in a footnote that Mr. Rosales was given a belated opportunity to file a notice of appeal through postconviction relief. *Id.* at *1. The footnote stated, "[a]ppellant's initial appeal was voluntarily dismissed as untimely filed. Appellant subsequently filed a Petition for Post-Conviction Relief based on his counsel's failure to note a timely appeal, and he was given the right to file a belated notice of appeal." *Id.* at *n.1. Neither party had raised any issue about jurisdiction before the Court of Special Appeals. Mr. Rosales petitioned this Court for a writ of certiorari, which this Court granted on March 6, 2018.

Mr. Rosales presents one question for our review:

1. Were the complainant's prior convictions for committing violent crimes in aid of racketeering activity, *i.e.*, for conspiracy to commit assault with a dangerous weapon in aid of racketeering activity and threatening to commit a crime of violence in aid of racketeering activity, admissible for purposes of impeachment under Maryland Rule 5-609?

As explained more fully below, we answer yes.

On August 28, 2018, after briefing this Court on the merits, the State raised for the first time a lack of appellate jurisdiction in the Court of Special Appeals and this Court and

filed a Motion to Vacate and Remand with Instructions to Dismiss for Lack of Jurisdiction. The State argued dismissal of this matter was mandatory and that the Court of Special Appeals should have never addressed the merits of this case. Mr. Rosales filed a response on September 4, 2018, arguing that the State waived any claim for lack of jurisdiction in this matter. Accordingly, we will also address the jurisdiction issue below.

## STANDARD OF REVIEW

"The standard of appellate review of an evidentiary ruling turns on whether the trial judge's ruling was based on a pure question of law, on a finding of fact, or on an evaluation of the admissibility of relevant evidence." *Brooks v. State*, 439 Md. 698, 708 (2014). Whether or not a crime bears upon credibility or is an infamous crime under Maryland Rule 5-609 is a question of law. *State v. Giddens*, 335 Md. 205, 213 (1994). Questions of law are reviewed under the *de novo* standard. *Brooks,* 439 Md. at 708–09. Accordingly, we will review the trial court's ruling on the evidence without any deference.

## DISCUSSION

### A. *Appellate Jurisdiction of this Court*

In the State's Motion to Vacate and Remand with Instructions to Dismiss for Lack of Jurisdiction, the State argues that this Court lacks jurisdiction for two reasons. First, the consent order did not make the prerequisite findings that would warrant a court granting a belated opportunity to appeal as postconviction relief. Second, under Maryland Rule 4-407, the consent order is not a final judgment. Mr. Rosales argues that the State waived any jurisdictional claim because the State did not raise the jurisdictional issue earlier and that the postconviction proceeding was sufficient under the Maryland Rules. For the

7

following reasons, this Court concludes it has jurisdiction to reach the merits of this case and declines to vacate and remand this matter with instructions to dismiss for lack of jurisdiction.

"In Maryland, appellate jurisdiction, except as constitutionally created, is statutorily granted." *Schuele v. Case Handyman & Remodeling Servs., LLC*, 412 Md. 555, 565 (2010) (citing *Gruber v. Gruber*, 369 Md. 540, 546 (2002); *Kant v. Montgomery Cty.*, 365 Md. 269, 273 (2001)). "[M]atters of jurisdiction are always before this [C]ourt and are exceptions to the general rule that we will consider only such questions as have been raised and decided below." *Carrier v. Crestar Bank, N.A.*, 316 Md. 700, 722 (1989) (quoting *Webb v. Oxley*, 226 Md. 339, 343 (1961)). Appellate jurisdiction is codified in § 12-301 of the Courts and Judicial Proceeding Article ("Cts. & Jud. Proc.") of the Maryland Code, which states in its entirety:

> Except as provided in § 12-302 of this subtitle, a party may appeal from a final judgment entered in a civil or criminal case by a circuit court. The right of appeal exists from a final judgment entered by a court in the exercise of original, special, limited, statutory jurisdiction, unless in a particular case the right of appeal is expressly denied by law. In a criminal case, the defendant may appeal even though imposition or execution of sentence has been suspended. In a civil case, a plaintiff who has accepted a remittitur may cross-appeal from the final judgment.

The statute contains no time provision for entry of an appeal. *Cf.* Cts. & Jud. Proc. § 12-401(e) ("Except as provided in paragraph (2) of this subsection, an appeal shall be taken by filing an order for appeal with the clerk of the District Court within 30 days from the date of the final judgment from which appealed.") (illustrating a statutory time limitation in the context of an appeal from a district court to a circuit court).

8

Currently, no statute sets forth a time limitation for an appeal from a final judgment of a circuit court in a criminal matter such as this one. Instead, the time limitation is governed by the Maryland Rules. Maryland Rule 8-202(a) details the time limitation for a party to file an appeal from a final judgment in the circuit court. Specifically, the Rule states, in pertinent part, "[e]xcept as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Md. R. 8-202(a).

This current scheme did not always exist. Until the adoption of the 1957 Maryland Code, there was a time limitation for appeals set forth in both statute and rules. Specifically, the predecessor statute to the current appellate jurisdiction statute contained a time limitation to notice an appeal. Additionally, the Maryland Rules also contained different time provisions within the Rules for noticing an appeal based on the type of action, such as a criminal or a civil action, that was appealed.

With the adoption of the 1957 Code, the thirty-day time limitation for appeals from a circuit court to an appellate court was eliminated from the statute. *Compare* Md. Code (1951), Art. 5 § 6 ("All appeals, or writs of errors, allowed from any judgment or determination of a court of law, to the Court of Appeals[2] of this State, other than from decisions on questions arising under the insolvent law, shall be taken within thirty days from the date of such judgment or determination. . . .") *with* Md. Code (1957), Art. 5 § 6 ("Any party may appeal to the Court of Appeals from a final decree, or order in the nature

---

[2] Maryland's intermediate appellate court, the Court of Special Appeals, was established in 1966 and thus is not referenced in the statutes of the 1950s.

of a final decree, entered by a court of equity."). It is significant that from the 1957 Code to present, no statute has set forth a time limit for an appeal in a case such as this one.

Thus, the General Assembly removed the time limitation for appeals in the 1957 code and this Court exclusively adopted the time limitation as a part of Maryland Rule 812.[3] In a committee note to Maryland Rule 812, the Court's Standing Committee on Rules of Practice and Procedure stated:

> The committee invited attention to the fact that by this Rule the time for taking an appeal is uniformly made thirty days in all cases, civil as well as criminal. Since the adoption of this Rule a great many procedural provisions in statutes providing different times for appeal have been repealed.

Thus far, this Court has failed to acknowledge this change in the statutory scheme.[4] We have continued to refer to the requirement of Maryland Rule 8-202(a) and its predecessors as "jurisdictional." Therefore, if an appellant failed to comply with the thirty-day filing requirement, we would, in dismissing the appeal for that reason, frequently refer to a lack of "jurisdiction."

Our prior case law evidences this reliance on statutory jurisdiction. In 1858, in *Porter v. Timanus*, this Court reviewed several orders and decrees from the Orphans Court for Howard County. 12 Md. 283 (1858). At the onset of the opinion, this Court declared two of the orders "not open for review" and dismissed them from the appeal "on the ground[s] that [the appeal of the orders] was not taken in thirty days, as required by the act

---

[3] This Rule is now Maryland Rule 8-202(a).

[4] We thank the Standing Committee on Rules of Practice and Procedure for recently bringing this inconsistency to our attention. *See* Standing Comm. on Rules of Practice & Procedure, No. 195, Notice of Proposed Rules Changes (2018).

of 1818, ch. 204, sec. 1." *Id.*  In *Porter*, the thirty-day requirement was set forth in the statute.  Therefore, a failure to comply with the statute divested this Court of authority to reach the merits of the appeal.

Error arose when this Court began characterizing the thirty-day requirement as "jurisdictional" after the adoption of the 1957 Code.  This language occurred in *Houghton v. Cty. Com'rs. of Kent Cty.*, when this Court referred to the dismissal of an appeal under the Maryland Rule 1012, now Rule 8-202(a), as a "jurisdictional" rule.[5]  305 Md. 407, 413 (1986) ("Consequently, the present appeal was taken more than thirty days from the final judgment of the circuit court.  The requirement of Rule [8-202] and its predecessors, that an order of appeal be filed within thirty days of a final judgment, is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed."), *superseded by Rule on other grounds as stated in Hiob v. Progressive Am. Ins. Co.*, 440 Md. 466 (2014).  In *Houghton*, this Court used a string citation of the "jurisdictional" precedent as far back as *Porter* to support the incorrect proposition that the thirty-day requirement in the Rules at that time was a "jurisdictional" rule.  The use of the string citation failed to distinguish the cases from those that were decided after the statutory change.

---

[5] We note that prior to our decision in *Houghton*, this Court at times applied the Rule as a jurisdictional bar even though the specific term "jurisdiction" was not used.  *See e.g.*, *Clinton Petroleum Servs., Inc. v. Norris*, 271 Md. 665 (1974) ("This [Rule] is mandatory. Thus, we have no alternative but to dismiss the appeal. . . .").

11

Reliance on *Houghton* has continued.  *See*, *e.g.*, *Griffin v. Lindsey*, 444 Md. 278, 285–86 (2015) ("The 30-day requirement for notices of appeal 'is jurisdictional; if [it] is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed.'") (citing *Houghton*, 305 Md. at 413); *Keys v. State*, 195 Md. App. 19, 27–28 (2010) (citing *Houghton*, 305 Md. at 413) ("With respect to a notice of appeal, the requirement that it 'be filed within thirty days of a final judgment is jurisdictional; if the requirement is not met, the appellate court acquires no jurisdiction and the appeal must be dismissed.'").  We now recognize that this interpretation of Maryland Rule 8-202(a) and its predecessors is incorrect in that we have failed to account for the 1957 Code adoption that removed the thirty-day requirement from the statute.

The Supreme Court of the United States recently clarified an interpretation of an analogous federal statute in *Hamer v. Neighborhood Hous. Servs. of Chi.*, 138 S. Ct. 13 (2017).  In *Hamer*, the United States Court of Appeals for the Seventh Circuit determined that it lacked jurisdiction to reach the merits of an appeal because the appeal was untimely filed pursuant to Federal Rule of Appellate Procedure 4(a)(5)(C), which limited the time for filing an appeal in certain circumstances.  *Id.* at 18.  The Seventh Circuit stated the untimely filing mandated dismissal of the appeal.  *Id.*

After a review of the issue, the Supreme Court vacated the Seventh Circuit's dismissal stating, "a time limit prescribed only in a court-made rule. . . is not jurisdictional; it is, instead, a mandatory claim-processing rule subject to forfeiture if not properly raised by the appellee."  *Id.* at 16.  Ultimately, the Supreme Court held that the time limitation for an extension of time to file a notice of appeal pursuant to Federal Rule Appellate Procedure

12

4(a)(5)(C) was a claim-processing rule, subject to waiver or forfeiture, and not a jurisdictional statute requiring immediate dismissal. *Id.* at 22.

The Supreme Court reasoned that only Congress may determine a federal court's subject-matter jurisdiction. *Id.* at 17. Therefore, a time limit in a court rule only qualifies as jurisdictional if Congress sets forth the limitation in statute. *Id.* "A time limit not prescribed by Congress ranks as a mandatory claim-processing rule, serving 'to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times.'" *Id.* (quoting *Henderson v. Shinseki*, 562 U.S. 428, 435 (2011)). The Court further explained:

> This Court and other forums have sometimes overlooked this distinction, "mischaracterize[ing] claim-processing rules or elements of a cause of action as jurisdictional limitations, particularly when that characterization was not central to the case, and thus did not require close analysis." But prevailing precedent makes the distinction critical. Failure to comply with a jurisdictional time prescription, we have maintained, deprives a court of adjudicatory authority over the case, necessitating dismissal—a "drastic" result. The jurisdictional defect is not subject to waiver or forfeiture and may be raised at any time in the court of first instance and on direct appeal. In contrast to the ordinary operation of our adversarial system, courts are obliged to notice jurisdictional issues and raise them on their own initiative.

*Id.* (citations omitted). The mandatory claim-processing rules that the Courts promulgate on the other hand are less rigid. *Id.*

As explained above, some opinions of this Court have referred to the thirty-day time limitation in the Maryland Rules as "jurisdictional," failing to recognize that the thirty-day requirement no longer appears in the statute. We now recognize that Maryland Rule 8-202(a) is a claim-processing rule, and not a jurisdictional limitation on this Court. Despite

13

this recognition, Maryland Rule 8-202(a) remains a binding rule on appellants, and this Court will continue to enforce the Rule. We are not concluding that it is inappropriate for a court to dismiss an untimely appeal. Rather, we are stating that the appropriate grounds for dismissal of an untimely appeal is to dismiss for a failure to comply with the Maryland Rules, instead of for lack of jurisdiction. Further, as the Rule is not jurisdictional, a reviewing court must examine whether waiver or forfeiture applies to a belated challenge to an untimely appeal.

Proper characterization of Maryland Rule 8-202(a) as a claim-processing rule permits us to consider the basis for review of Mr. Rosales' belated appeal. This Court has consistently recognized that a belated appeal can be granted as a postconviction remedy for constitutionally ineffective assistance of counsel. *See, e.g.*, *Garrison v. State*, 350 Md. 128, 142–43 (1998) ("[W]hen an accused can show that appellate review of his conviction has been frustrated by his trial or appellate attorney's inaction in failing to file timely an appeal that an accused has promptly and diligently requested be filed, or when, through no fault of his own, an accused's desired appeal is not timely filed on his behalf, a belated appeal may be a proper remedy under post conviction procedures.").

Postconviction proceedings commence upon the filing of a petition for postconviction relief in the circuit court in which the defendant was convicted. Md. R. 4-401(a). A hearing is promptly held on the petition "unless the parties stipulate that the facts stated in the petition are true and that the facts and applicable law justify the granting of relief." Md. R. 4-406(a). Upon the conclusion of the hearing, "[t]he judge shall prepare and file or dictate into the record a statement setting forth separately each ground upon which the petition is based, the federal and state rights involved, the court's ruling with

14

respect to each ground, and the reasons for the action taken thereon." Md. R. 4-407(a). Additionally, the judge shall issue "an order either granting or denying relief." Md. R. 4-407(b). "The statement and order constitute a final judgment when entered by the clerk." Md. R. 4-407(d).

In this case, the postconviction court did not follow the appropriate postconviction procedures. Mr. Rosales and the State entered into a consent agreement signed by the postconviction court to permit a belated appeal. A hearing was not held on the merits of the ineffective assistance of counsel claim and the postconviction court did not issue a statement of reasons or order. Further, the consent order reserved Mr. Rosales' right to refile a postconviction petition upon the conclusion of these appellate proceedings.

Ordinarily, we would dismiss Mr. Rosales' appeal for failure to comply with the Rule's thirty-day deadline and the absence of the postconviction court's proper findings under the Postconviction Act to grant a belated appeal. However, this Court believes it is evident from the record of the postconviction hearing that the State was conceding ineffective assistance of counsel with respect to the failure of Mr. Rosales' counsel to file a timely appeal. The record indicates that Mr. Rosales, the State, and the postconviction court agreed that a belated appeal was a proper remedy.

Further, this issue has proceeded through the appellate system without the State filing a motion under Maryland Rule 4-408 or objecting to a review on the merits by the Court of Special Appeals. "[A] question not presented or argued in an appellant's brief is waived or abandoned and is, therefore, not properly preserved for review." *See Hobby v. State*, 436 Md. 526, 542 (2014) (quoting *State v. Jones*, 138 Md. App. 178, 230 (2001),

15

*aff'd* 379 Md. 704 (2004)).  Where the State has failed to object to the entry of the consent order during the postconviction proceedings and has failed to raise this issue before the Court of Special Appeals, the State has effectively waived any objection to the inadequate postconviction proceedings.  Finally, Maryland Rule 1-201(a) states, "[t]hese rules shall be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay."

For the reasons stated above, given the unique history of these proceedings and the apparent consent of all parties, this case presents a narrow circumstance in which we will consider the merits without the filing of a timely appeal or without the postconviction court following the appropriate postconviction process.  Otherwise, a remand would inevitably result in the postconviction court making the appropriate findings under the Postconviction Act to permit Mr. Rosales to file a belated appeal, the appeal working its way up the appellate ladder, and this Court addressing the exact issue that was already briefed and argued before this Court.  Therefore, we will reach the merits of this matter.  We can take this step because, considering our above reconsideration of how the 30-day filing requirement relates to appellate jurisdiction, there is no jurisdictional impediment for us to do so.  This is an exceptional circumstance, and this Court urges the circuit courts in the future to comply with the postconviction procedures outlined in Maryland Rule 4-401 et seq.

### B. *Witness Impeachment pursuant to Maryland Rule 5-609*

Maryland Rule 5-609 governs the admissibility of a witness' prior conviction of a crime for impeachment purposes.  The Rule states:

**(a) Generally.** For the purposes of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if elicited from the witness or established by public record during examination of the witness, but only if (1) the crime was an infamous crime or other crime relevant to the witness's credibility and (2) the court determines that the probative value of admitting this evidence outweighs the danger of unfair prejudice to the witness or the objecting party.

**(b) Time Limit.** Evidence of a conviction is not admissible under this Rule if a period of more than 15 years has elapsed since the date of the conviction, except as to a conviction for perjury for which no time limit applies.

**(c) Other Limitations.** Evidence of a conviction otherwise admissible under section (a) of this Rule shall be excluded if:

    (1) the conviction has been reversed or vacated;

    (2) the conviction has been the subject of a pardon; or

    (3) an appeal or application for leave to appeal from the judgment of conviction is pending, or the time for noting an appeal or filing an application for leave to appeal has not expired.

**(d) Effect of Plea of Nolo Contendere.** For purposes of this Rule, "conviction" includes a plea of nolo contendere followed by a sentence, whether or not the sentence is suspended.

Rule 5-609 requires a three-part analysis before a court determines whether a witness' prior conviction is admissible.

First, the court must determine whether the crime is an "infamous crime or other crime relevant to the witness' credibility." Md. R. 5-609. "If a crime does not fall within one of the two categories, then it is inadmissible and the analysis ends." *Cure v. State*, 421 Md. 300, 324 (2011) (quoting *State v. Westpoint*, 404 Md. 455, 477–78 (1994)). "Infamous crimes include treason, common law felonies, and other offenses classified generally as *crimen falsi*." *State v. Giddens*, 335 Md. 205, 213 (1994). *Crimen falsi* includes crimes that have an element of deceitfulness, untruthfulness, or falsification and so bear directly on the witness' propensity to testify truthfully, such as perjury, false statement, criminal fraud, embezzlement, or false pretense. *Id.* at 213 n.5. The common law felonies include

17

"murder, manslaughter, robbery, rape, burglary, larceny, arson, sodomy, and mayhem."

*Cure*, 421 Md. at 324 (quoting *Robinson v. State*, 4 Md. App. 515, 523 n.3 (1968)).

Statutory felonies are not infamous crimes. *State v. Westpoint*, 404 Md. 455, 476 (2008)

(quoting *Prout v. State*, 311 Md. 348, 363 (1988)) ("[C]rimes, other than those that are

infamous, whether misdemeanors or statutory felonies, fall into the class of lesser crimes

and may or may not reflect one's tendency to be truthful.").

As to credibility:

> To fall into the category of "other crimes relevant to credibility," the crime itself, by its elements, must clearly identify the prior conduct of the witness that tends to show that he is unworthy of belief. Moreover, a crime tends to show that the offender is unworthy of belief, if the perpetrator "lives a life of secrecy" and engages in "dissembling in the course of [the crime], being prepared to say whatever is required by the demands of the moment, whether the truth or a lie."

*Anderson v. State*, 227 Md. App. 329, 339 (2016) (alteration in original) (quoting *State v.*

*Westpoint*, 404 Md. 455, 464 (2008)) (citing *Washington v. State*, 191 Md. App. 48, 82

(2010)).

After the classification of the conviction, the court determines whether the

conviction is more than fifteen years old. *Cure*, 421 Md. at 324. Finally, the court balances

the probative value of the conviction against its potential for unfair prejudice. *Id.* at 325.

If the conviction is admissible, "the name of the conviction, the date of the conviction, and

the sentence imposed" is introduced. *Giddens*, 335 Md. at 222.

In this matter, the trial court excluded the convictions based on the initial step,

finding that the underlying substantive offense of Mr. Hernandez-Melendez's prior

convictions were general crimes of violence that were inadmissible for impeachment

purposes. Mr. Hernandez-Melendez was convicted in the Federal District Court in the District of Columbia of (1) conspiracy to commit assault with a dangerous weapon in aid of racketeering, and (2) threatening to commit a crime of violence in aid of racketeering in violation of Violent Crimes in Aid of Racketeering Activity, 18 U.S.C. § 1959. Crimes committed under 18 U.S.C. § 1959 are commonly classified as "VICAR" crimes. *See, e.g.*, *United States v. Candelario-Santana*, 834 F.3d 8, 15 (1st Cir. 2016); *United States v. Kamahele*, 748 F.3d 984, 993 (10th Cir. 2014).

Neither party contends Mr. Hernandez-Melendez's convictions fall under the scope of "infamous crimes" under Maryland Rule 5-609. Rather, Mr. Rosales argues that Mr. Hernandez-Melendez's convictions are admissible as relevant to credibility for witness impeachment.

This is not the first case in which we have been asked to clarify the limits of other crimes relevant to the witnesses' credibility. *State v. Giddens* is the seminal Maryland case on this topic. 335 Md. 205 (1994). In *Giddens*, we resolved "whether a three-year old conviction for distribution of cocaine may be used to impeach a witness' credibility under [Maryland Rule 5-609]." *Id.* at 207. In that case, the issue before the jury was "purely one of credibility." *Id.* at 208. The State sought to introduce evidence of a prior conviction for distribution of cocaine to undercut his credibility.

We concluded that convictions for drug manufacturing, distribution, or possession with intent to distribute involved:

> A person who has committed crimes that posed grave danger to the fabric of society, that only could have been carried on furtively, and that required him

19

to take great pains to conceal his conduct, would probably not be adverse to concealing the truth if it is to his advantage to do so.

*Id.* at 217 (quoting *Carter v. State*, 80 Md. App. 686, 694 (1989)). The Court used this reasoning to distinguish the narcotics trafficker from the mere possessor. We determined that "an individual convicted of cocaine distribution would be willing to lie under oath." *Id.*

We reached our conclusion by parsing the motivations of one who uses drugs recreationally and one who surreptitiously profits from their distribution and use by others. We determined a drug dealer "lives a life of secrecy and dissembling in the course of [his] activity . . . ." *Id.* (quoting *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)). The dealer's profession, by nature, necessitates being "prepared to say whatever is required by the demands of the moment" to evade detection and maintain his criminal enterprise. *Id.* Thus, we held that a prior conviction for distribution of cocaine is admissible to impeach a witness' credibility. *Id.*

*Giddens* draws the boundary line between the dishonesty inherent in "all violations of the law" and the extraordinary dishonesty that is a crucial characteristic of those engaging in particular offenses. *Id.* at 215. The latter is demarcated by those acts which "pose[] grave danger to the fabric of society"; "only could have been carried on furtively"; required "great pains to conceal"; necessitate "a life of secrecy and dissembling"; and involve being "prepared to say whatever is required by the demands of the moment." *Id.* at 217.

As a matter of first impression, we are asked to determine whether one who "murders, kidnaps, maims, assaults with a dangerous weapon, [or] commits assault resulting in serious bodily injury," or threatens, attempts, or conspires to do so, in order to gain entrance to or increase standing in an enterprise he or she knows to be engaged in racketeering activity is an impeachable offense.[6] Mr. Rosales urges us to reach the same conclusion about individuals who commit VICAR offenses as we did in *Giddens* of those individuals who distribute narcotics. He argues that like narcotics distribution, all individuals involved in RICO enterprises would also be prepared to say whatever is required of the moment, whether a truth or a lie. The State argues a VICAR conviction does not have any bearing on a witness' credibility simply because the violent act was performed in relation to racketeering activity. The State contends "racketeering activity" is a RICO predicate act and RICO predicate acts run the gamut from murder to making unlawful payments or loans to labor organizations. Given the wide net of conduct captured

---

[6] In *In re Gary T.*, the Court of Special Appeals examined whether a prior conviction for conspiracy to distribute marijuana could be admissible for impeachment. 222 Md. App. 374, 377 (2015). In *Gary T*, the defendant sought to impeach the victim witness by showing the victim had been convicted of conspiracy to distribute marijuana. *Id.* The trial court excluded the evidence, concluding the evidence was not an impeachable offense and that the probative value would not outweigh any prejudice to the witness. *Id.* at 386. The Court of Special Appeals held that a prior conviction for conspiracy to distribute a controlled dangerous substance may be used as impeachment evidence. *Id.* In reaching this conclusion, the Court of Special Appeals determined, "[i]f, for purposes of Rule 5-609, the crime that the witness had agreed to commit is an infamous one or one that is relevant to the witness' credibility and thus would qualify as an impeachable offense, the conspiracy to commit that crime should as well." *Id.* at 385. We agree. *In re Gary T.* instructs us to examines the underlying offense of the conspiracy to determine whether the conspiracy conviction is admissible. Therefore, the fact that Mr. Hernandez-Melendez's convictions were for conspiracy do not alter our analysis.

21

in the term racketeering activity, the actual conduct of the witness is unknown if presented to a jury.

We agree with Mr. Rosales. In reaching this conclusion, it is important to review the purpose behind 18 U.S.C. § 1959 and the elements that must be established to be convicted of such an offense. In 1984, President Ronald Reagan signed the Comprehensive Crime Control Act into law. *See* Comprehensive Crime Control Act of 1989, Pub. L. No. 98-473, 98 Stat. 1837 (1984). Among other changes, the law amended the Interstate Travel in Aid of Racketeering statute to include the VICAR language, now codified at 18 U.S.C. § 1959. At that time, the Senate asserted that "the need for Federal jurisdiction [was] clear, in view of the Federal Government's strong interest . . . in suppressing the activities of organized criminal enterprises . . ." S. Rep. No. 98-255, at 305 (1983). Most pertinent were such enterprises as "organized crime 'families'" (i.e., the Mafia) and "legitimate business organizations" engaged in activities such as mail fraud and illegal distribution of controlled substances. *Id.* at 307.

The elements of Violent Crimes in Aid of Racketeering Activity, 18 U.S.C. § 1959 (2017) provide, in relevant part, as follows:

> (a) Whoever, as consideration for the receipt of, or as consideration for a promise or agreement to pay, anything of pecuniary value from an enterprise engaged in racketeering activity, or for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, murders, kidnaps, maims, assaults with a dangerous weapon, commits assault resulting in serious bodily injury upon, or threatens to commit a crime of violence against any individual in violation of the laws of any State or the United States, or attempts or conspires so to do, shall be punished[:]

22

(4) for threatening to commit a crime of violence, by imprisonment for not more than five years or a fine under this title, or both;

(6) for attempting or conspiring to commit a crime involving maiming, assault with a dangerous weapon, or assault resulting in serious bodily injury, by imprisonment for not more than three years or a fine. . .under this title, or both.

"Racketeering activity" is defined as set forth in § 1961, The Racketeer Influenced and Corrupt Organizations Act ("RICO"). 18 U.S.C. § 1959(b)(1) (2017). Specifically, "racketeering activity" is:

(A) Any act or threat involving murder, kidnapping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical. . . which is chargeable under State law and punishable by imprisonment for more than one year" and (B) any act which is indictable under several provisions of title 18, including, but not limited to, crimes related to bribery, counterfeiting, embezzlement from pension and welfare funds, fraud, tampering with a witness, and forgery.

18 U.S.C. § 1961 (2017). These are commonly referred to as RICO "predicate acts." *See Beck v. Prupis*, 529 U.S. 494, 497 n.2 (2000). "Enterprise" is defined as "any partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity, which is engaged in, or the activities of which affect, interstate or foreign commerce." 18 U.S.C. § 1959(b)(2) (2017).

The government must prove elements concerning both the enterprise and the defendant beyond a reasonable doubt to successfully prosecute an individual under § 1959. First, regarding the enterprise, the government must show: (a) the existence of an enterprise; (b) that the enterprise engaged in, or affected, interstate or foreign commerce; and (c) that the enterprise engaged in racketeering activity. Next, regarding the defendant, the government must first prove that he or she committed—or threatened, attempted, or

23

conspired to commit—a predicate offense. Further, the defendant must have committed the predicate offense either: (i) as consideration for the receipt of anything of pecuniary value, or (ii) for the purpose of gaining entrance to or maintaining or increasing the position in, the charged enterprise. The charged individual must also act with the mens rea necessary for a conviction under § 1959. Specifically, the individual must act with the purpose of receiving something of pecuniary value from the enterprise or with the purpose of joining, increasing, or maintaining his standing, or that of another in the racketeering enterprise.

Upon a review of the elements, VICAR offenses strike at the heart of what it means to "live[] a life of secrecy and dissembling[,] . . . being prepared to say whatever is required by the demands of the moment, whether the truth or a lie." *State v. Giddens*, 335 Md. 205, 217 (1994). The criminal enterprises central to any VICAR offense are specifically formed to subvert and replace societal norms, reshape existing power structures to be under the control of criminal bodies, and engage in furtive criminal activity that, in turn, destabilizes the very communities in which they operate.

Paralleling *Giddens*, this Court must parse the difference between one who commits simple assault and one who commits assault with express purpose of aiding an enterprise engaged in racketeering. Typically, this Court has held that a conviction for an act of violence is not relevant to a witness' credibility and may not be used to impeach a witness. *See State v. Duckett*, 306 Md. 503, 512 (1986) (holding battery was non-impeachable because battery "is so vague that the misconduct cannot be readily ascertained"), *superseded by Statute on other grounds as stated in Watts v. State*, 457 Md. 419 (2018);

24

*Ricketts v. State*, 291 Md. 701 (1981) (holding indecent exposure was not relevant to credibility); *State v. Jones*, 217 Md. App. 676 (2014) (holding conviction for attempted second-degree murder is a non-impeachable offense). Convictions for acts of violence are non-impeachable under Rule 5-609 because acts of violence "generally have little or no direct bearing on honesty and veracity." *State v. Duckett*, 306 Md. 503, 512 (1986) (citing *Gordon v. United States*, 127 U.S. App. D.C. 343, 347 (1967), *cert denied* 390 U.S. 1029 (1968)). Rather, acts of violence typically "result from a short temper, a combative nature, extreme provocation, or other causes." *Id.* (quoting *Gordon,* 127 U.S. App. D.C. at 347).

In considering VICAR offenses, the requisite mens rea is unlike that of typical acts of violence. As previously stated, an individual convicted of a VICAR offense must act in consideration for something of pecuniary value or with the purpose of gaining entrance into, maintaining a position in, or increasing position in the enterprise to be convicted under § 1959. VICAR offenses are different from other acts of violence which we have previously held are not impeachable. Typically, one who aids a racketeering enterprise will be living "a life of secrecy and dissembling," "being prepared to say whatever is required by the demands of the moment," and "pos[ing] [a] grave danger to the fabric of society . . . ." *Giddens*, 335 Md. at 217.

"At the very heart of our determination. . . is the kinds of conduct which give rise to this offense." *State v. Westpoint*, 404 Md. 455, 480 (2008). The association with others in the enterprise in a concerted effort to advance or cover up racketeering activity, not the predicate offense, that makes VICAR crimes inherently deceitful. The criminal conduct at issue is measured, planned, and entered into, not out of haste, but as a critical element of a

25

person's membership in a racketeering enterprise. Further, much of this conduct requires secrecy and tears at the fabric of society.[7] Therefore, we conclude that, pursuant to the standard enumerated in *Giddens*, VICAR offenses are within the "eligible universe" of offenses which may be used to impeach a witness' credibility.

While some racketeering activity under § 1961 may not qualify as an infamous crime or be otherwise relevant to a witness' credibility, on balance, the great majority of enumerated offenses meet these criteria. Many of the predicate and racketeering offenses engaged in are admissible under either the "other crimes relevant to credibility" or "infamous crimes."[8] Further, gang and drug distribution activity account for over 60% of the racketeering activity in criminal RICO cases. *See* Pamela Bucy Pierson, *RICO Trends: From Gangsters to Class Actions*, 65 S.C.L. Rev. 213, 221 (2013). On balance, Hernandez-Melendez's VICAR conviction is certainly within the "eligible universe" of

---

[7] For example, *see United States v. Cornell*, 780 F.3d 616, 620 (4th Cir. 2015) (enterprise was the Latin Kings gang which was involved in attempted murder, armed robbery, and bank fraud); *United States v. Basciano*, 599 F.3d 184, 194–95 (2d Cir. 2010) (enterprise was the Bonanno crime family, which was engaged in the solicitation of murder and drug distribution, among other things); *United States v. Crenshaw*, 359 F.3d 977, 992 (8th Cir. 2004) (enterprise was a gang known as the "Rolling 60's Crips" associated for the common purpose of selling cocaine); *United States v. Phillips*, 239 F.3d 829, 843–44 (7th Cir. 2001) (enterprise was a street gang known as "Dawg Life" that engaged in drug trafficking); *United States v. Gray*, 137 F.3d 765, 772–73 (4th Cir. 1998) (enterprise was a drug distribution ring involved in murder and the sale of heroin); *United States v. Fiel*, 35 F.3d 997, 1003–04 (4th Cir. 1994) (enterprise was the Fates Northern Virginia chapter of a motorcycle gang engaged in drug distribution); *United States v. Concepcion*, 983 F.2d 369, 375 (2d Cir. 1992) (enterprise was a "wholesale and retail narcotics organization known as the 'Unknown Organization'"); *United States v. Long*, 651 F.2d 239, 241 (4th Cir. 1981) (enterprise was the Office of Senator in the South Carolina legislature engaged in bribery).

[8] For example, murder, under the infamous crimes prong is admissible.

those convictions admissible to impeach a witness' credibility, especially when viewed with an eye toward the racketeering activity most frequently engaged in by criminal enterprises. We see no principled rationale to distinguish this case from *Giddens*. Thus, *Giddens* should control here.

Moving on to the second and third steps of the Maryland Rule 5-609 analysis, the second step requires that we ensure that the conviction is less than fifteen years old, has not been reversed or vacated, was not the subject of a pardon, and no appeal from the judgment is pending. *See* Md. R. 5-609(b)-(c). In this case, the conviction occurred in 2011 and was therefore less than fifteen years old. None of the other potential issues are applicable here.

Under the third step, the Court must ensure that the probative value of the conviction outweighs its prejudicial impact. Md. R. 5-609(a)(2). The trial court never conducted this balancing test because it concluded that the conviction failed the first step and was not probative of credibility. The five factors relevant to assessing whether probative value outweighs prejudicial impact include: "(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the [witness'] subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the [witness'] testimony; and (5) the centrality of the [witness'] credibility." *Burnside v. State*, 459 Md. 657, 675 n.8 (2018) (quoting *Jackson v. State*, 340 Md. 705, 717 (1995)).

Regarding the first factor, because VICAR convictions substantially impact the witness' credibility, explained in detail above, such a conviction has significant impeachment value. Thus, this factor weighs in favor of admission. Factor two and three,

27

are not particularly relevant here as Mr. Hernandez-Melendez was the victim, not the defendant. Factors four and five weigh heavily in favor of admitting the conviction. "[T]he potential for unfair prejudice is less . . . where the witness to be impeached with evidence of a prior conviction is not the defendant." *King v. State*, 407 Md. 682, 704 (2009). Mr. Hernandez-Melendez was the victim of the attack and the only witness, and he only recognized Mr. Rosales as one of his attackers because of their previous interaction in the MS-13 gang. His credibility was central to the prosecution. Therefore, we conclude the factors weigh in favor of admission.

The final issue we must address is whether failing to allow impeachment with the criminal convictions was harmless beyond a reasonable doubt. Mr. Rosales argues that the case turned heavily on Mr. Hernandez-Melendez's credibility. He asserts that the exclusion of any evidence bearing on Mr. Hernandez-Melendez's credibility was harmful error. The State disagrees, noting that during the trial on numerous occasions, Mr. Hernandez-Melendez stated that he was in prison and described instances of his conduct relating to his involvement with MS-13. The only thing the jury would have learned from the admission of the convictions, the State argues, is the name of crimes for which Mr. Hernandez-Melendez was convicted.

Typically, to determine whether the error committed by the trial court was harmless, we apply the following test:

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated. Such reviewing court must thus be satisfied that there is not a reasonable

possibility that the evidence complained of—whether erroneously admitted or excluded—may have contributed to the rendition of the guilty verdict.

*Dorsey v. State*, 276 Md. 638, 659 (1976). Moreover, this Court has recognized that "where credibility is an issue and, thus, the jury's assessment of who is telling the truth is critical, an error affecting the jury's ability to assess a witness' credibility is not harmless error." *Dionas v. State*, 436 Md. 97, 110 (2013).

In *Devincentz v. State*, we reviewed what we termed "he said she said" cases, turning "entirely on the relative credibility of the defendant and the accuser." 460 Md. 518, 561–62 (2018). There, the jury was prevented from considering testimony from the victim's step-brother that the victim told her alleged abuser that she could do things "that would get him in trouble." *Id.* at 553. Ultimately, we decided that excluding this evidence was not harmless "because [the] errors affected the jury's ability to assess [the victim's] credibility. *Id.* at 562. Rosales' jury, on the other hand, had ample opportunity to learn of Mr. Hernandez-Melendez's suspect credibility.

In the present case, the defense counsel referred to Mr. Hernandez-Melendez as "a convicted felon" in his opening state and as a "gangster" throughout the case. Mr. Hernandez-Melendez testified and admitted on numerous occasions to his membership in the MS-13 gang. Further, he admitted to engaging in criminal activity with the gang. Specifically, he stated that he would "attack other gangs." Mr. Hernandez-Melendez also told the jury that he had been "in jail for about four years" which he served pursuant to the VICAR convictions. He also stated that he was on probation both at the time of the attack and during his current testimony.

29

The rationale in favor of admitting the VICAR convictions, as stated above, is that criminal activity in aid of racketeering enterprise is probative of credibility. If the jury already knew that Mr. Hernandez-Melendez was involved with an enterprise engaged in racketeering—the MS-13 gang—and that he was incarcerated for this association, knowing the name, date, and sentence imposed would add little value to the jury's consideration of the witness' credibility.

For these reasons, the jury had the benefit of sufficient information to evaluate and determine the victim's credibility. While erroneous, there is not a reasonable possibility that excluding impeachment evidence in the form of Mr. Hernandez-Melendez's VICAR convictions contributed to the guilty verdict against Rosales. We conclude the error was harmless beyond a reasonable doubt.

## CONCLUSION

Maryland Rule 8-202 requires an appellant to file a notice of appeal within thirty days of entry of a judgment. This is not a limit on an appellate court's jurisdiction but is more properly classified as a claim processing rule. Properly understood, we are not barred from reaching the merits of this case. As to the merits, we hold that Mr. Hernandez-Melendez's prior VICAR convictions for conspiracy to commit assault with a dangerous weapon in aid of racketeering, and threatening to commit a crime of violence in aid of racketeering are admissible for impeachment purposes under Maryland Rule 5-609. The trial court erred in excluding the witness' prior convictions for impeachment purposes. The trial court should not have restricted cross-examination of Mr. Hernandez-Melendez.

30

However, we hold further that the exclusion of these convictions was harmless beyond a reasonable doubt.  Therefore, Mr. Rosales is not granted a new trial.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**