McKENNA et ux. *v.* SACHSE, Executor, et al.

[No. 306, September Term, 1960.]

(Two Appeals In One Record)

596

*Decided June 14, 1961.*

The cause was argued before BRUNE, C. J., and HAMMOND, PRESCOTT, HORNEY and SYBERT, JJ.

*R. Cresap Davis,* with whom was *Louis M. Strauss* on the brief, for appellants and cross-appellees.

*C. Maurice Weidemeyer* for Mary P. Barattini, one of the appellees and cross-appellants.

*Marvin I. Anderson* for George Sachse, Executor of the Estate of Louis M. Barattini, the other appellee and cross-appellant.

HAMMOND, J., delivered the opinion of the Court.

Mortgagees sought a decree in personam for $11,195.02, the deficiency shown in the auditor's account after foreclosure. They had bought in the property and resold it several months later at a $9,000 profit. The chancellor charged them with half of this profit and with $1,500, the sum the mortgagors had paid on a deficiency after foreclosure of another mortgage they had made and the mortgagees had assumed, and entered a decree in personam for $5,195.00 (the two cents seem to have been overlooked). The mortgagees appealed.

In 1955 Louis and Mary Barattini bought from John and Mary McKenna a house at Bay Ridge in Anne Arundel

County at a price of $50,000. The purchase price was paid with $22,500 lent by a building association on a first mortgage, plus a $15,000 second mortgage from the Barattinis to the McKennas and the conveyance to the McKennas by the Barattinis of two properties, in which the Barattinis had an agreed upon equity of $12,500.

Mr. Barattini died in late 1955, a few months after the purchase of the Bay Ridge house. In May 1957 the McKennas foreclosed their $15,000 second mortgage and bought in the property at the sale on June 10, 1957, for $4,642.28, subject to the first mortgage balance of $19,357.72. An order nisi was passed on June 19, a certificate of publication was filed on July 17 and a final order of ratification was signed on July 23. The same procedure was followed as to the report and account of the court auditor, the final order of ratification being signed on October 16, 1957. No exceptions were filed to ratification of either the sale or the auditor's account.

On October 24, 1957, the McKennas filed a petition seeking a decree in personam against Mrs. Barattini and the executor of Mr. Barattini for the $11,195.02 deficiency shown in the auditor's account. An answer was filed by Mrs. Barattini and Mr. Barattini's executor, which alleged (a) that the McKennas had bought in the property for $24,500 and resold it for $33,000 and had not suffered a loss as they had alleged; (b) that John McKenna, acting as a real estate broker pretended to be diligently trying to sell the property for Mrs. Barattini while, actually, he was hindering a sale; (c) that the Barattinis, as part of the purchase price of the Bay Ridge property, had conveyed to the McKennas certain lots on which they had previously given a mortgage of $19,000 to one Mary Porter, which the McKennas had assumed, on which foreclosure was threatened and a deficiency liability loomed so that it would be inequitable to grant the decree in personam under the circumstances.

No action transpired on the petition, and on February 25, 1960, Mrs. Barattini and her husband's executor filed a supplemental answer and cross claim, alleging (1) that the court was without jurisdiction to enter a decree against the execu-

tor because (a) an action at law would not lie; (b) the executor was not a party to the foreclosure proceedings; (c) the McKennas are estopped to claim a deficiency; and (2) that since the original answer the Porter mortgage had been foreclosed with a resulting deficiency of $2,662.03, which had been demanded of them and had been compromised by the payment of $1,500 which the answerers prayed the McKennas should be required to pay to them. A demurrer and answer were filed by the McKennas which said that the cross claim was not permissible and the matter was res judicata. The basis for reliance on res judicata is not specified in the demurrer and answer but the record shows that Mrs. Barattini and the executor had impleaded the McKennas in the Porter foreclosure in an effort to require them to pay the deficiency to Mrs. Porter or to the Barattinis, and that no action was ever taken by the court after it had ordered the McKennas made parties, presumably because of the compromise settlement by the Barattinis with Mrs. Porter.

We think the chancellor had no right to reduce the deficiency by half the amount of the profit the McKennas made on the resale of the Bay Ridge house. Whatever may be the rule in other states, by statute or judicial decision, ameliorating the obligations of a mortgagor to pay a deficiency when the mortgagee buys in the property at foreclosure sale, the Maryland rule is clear and fixed. In the absence of fraud or breach of actual trust, "it is also well established that since the confirmation of a foreclosure sale is the final determination by the court that the mortgaged property was sold at a fair price, the defense of inadequacy of price can not be raised in subsequent proceedings, and for the purpose of a deficiency decree the price obtained at the sale is conclusive on the question of the market value of the property." *Walton v. Washington County Hospital Ass'n,* 178 Md. 446, 451. It is also well established that the rights of a mortgagee to a deficiency decree are not lessened because he was the purchaser of the property at the foreclosure sale. *Pennsylvania Avenue Federal Savings & Loan Ass'n v. Fedder,* 175 Md. 127, 134; *Bletzer v. Cooksey,* 154 Md. 568, 570; *Kirsner v. Cohen,* 171 Md.

687, 691; *Windsor Construction Corp. v. Kolker,* 180 Md. 113, 119 (in the *Kirsner* and *Windsor* cases, although the opinion does not, the record shows that the mortgagees were the purchasers). See also *Cronin v. Gager-Crawford Co.* (Conn.), 25 A. 2d 652. It follows that the mortgagee-purchaser is not required to account to the mortgagor for a profit made upon a resale of the property. *Pennsylvania Avenue Federal Savings & Loan Ass'n v. Fedder,* and *Walton v. Washington County Hospital Ass'n,* both *supra;* annotation in 117 A. L. R. 863; *McKnight v. United States,* 259 F. 2d 540, 544.

Mrs. Barattini testified that she knew of the sale and asked her lawyer to attend. It can hardly be doubted that her husband's executor, in addition to the constructive notice afforded by publication, actually knew of the foreclosure. He does not allege or claim that he did not. If they were available at this stage as supports to the case of the Barattinis, neither inadequacy of price nor unfairness or impropriety at the foreclosure sale are alleged or shown. The real reliance is on Mr. McKenna's alleged hindering of the sale of the property while acting as broker for Mrs. Barattini. No effort was made to sustain the defenses in the answers that the executor could not have been sued at law on the covenants in the mortgage, that he could not be proceeded against because he was not a party to the foreclosure proceedings, and that the McKennas were estopped to claim a deficiency, and there is no substance to them. We find no support in the record for a finding that McKenna did or failed to do anything that tended to discourage a sale, much less to prevent one. He attempted to keep the property in condition that would attract buyers and apparently made reasonable efforts to procure a purchaser. He became angry on one occasion when an employee of another broker brought a prospect to the house without having had his superior clear the visit with him but his remonstrances were made out of the hearing of the prospects. This and the fact he did not effect a sale seem to have been the only specific complaints Mrs. Barattini had, aside from his insisting on keeping his "for sale" sign on the

property after she had told him not to (although, admittedly, she kept urging him to effect a sale and never gave the house exclusively to another broker). We find no basis for the chancellor's action in charging the McKennas with half the profit on the resale. Curiously, the ultimate purchaser was present at the foreclosure sale but apparently did not bid.

The reduction of the deficiency by $1,500, the amount the Barattinis paid on the Porter deficiency, was, we think, justified. In the sale of the Bay Ridge property $12,500 of the purchase price was the equity of the Barattinis in two properties, $5,000 being in the Porter property. The contract of sale provided that the McKennas took the Barattini properties "subject to existing mortgages." The quoted language would not, of itself, show that the McKennas had assumed the mortgages. *Chilton v. Brooks*, 72 Md. 554. But, as stated in *Rosenthal v. Heft*, 155 Md. 410, 419, "if the purchaser assumes the payment of the mortgage as a part of the purchase price of the property, then it does become his duty to pay it, and to protect the vendor against any demands that may be made against him for the debt which it secures * * *. Whether he did or did not assume it, is a matter of agreement, which may be express or implied * * *, which may be written or rest in parol, * * * and which may be separate from the deed * * *."

At the top of the deed from the Barattinis to the McKennas, as presented for record (presumably by the McKennas) and as recorded, is the writing "Full consideration $24,000 — Mortgage Assumed $19,000—Cash $5,000.00." The McKennas made various payments on the Porter mortgage and secured extensions of time for payments. It is extremely unlikely that the Barattinis would have used their $5,000 equity as part payment of the $50,000 purchase price if they were also to continue to pay the mortgage on the property in which they had the equity. We find the evidence to support the inference that, without regard to their liability to Mrs. Porter, the McKennas, as between themselves and the Barattinis, bound themselves to be responsible for the payment of the Porter mortgage.

The mortgagor, when pressed for a deficiency decree, may raise "any defense that could be made in an action at law on the covenants in the mortgage," *McDonald v. Building Ass'n,* 60 Md. 589, 592, that is, any defense such as payment or release, or any other defense to the claim which has arisen since confirmation of the sale. (Ibid 591.) 3 *Jones on Mortgages,* 8th Ed., Sec. 2206, p. 715; Miller, *Equity Procedure,* Sec. 449; Slingluff, *Mortgagee's Rights in the Event of a Deficiency,* 1 Md. L. R. 128, 139.

Here the liability for, and the compromise of the deficiency, in the Porter foreclosure arose after the confirmation of the Bay Ridge sale in foreclosure. The McKennas, as between themselves and the Barattinis, were bound to pay the Porter mortgage and, so, the deficiency. The Barattinis could recoup the $1,500 the McKennas owed them against the $11,-195.02 they owed the McKennas. Res judicata, if it were otherwise applicable, has no application because there was no final judgment or decree—in fact, no judgment or decree whatsoever—in the Porter foreclosure case as to the deficiency or as to the rights and obligations of the McKennas in regard to a deficiency.

The McKennas are entitled to a decree in personam against Mrs. Barattini and the executor of Mr. Barattini of $9,695.02.

> *Decree reversed and decree for $9,-695.02 entered in favor of John J. and Mary R. McKenna against Mary P. Barattini and George Sachse, executor of Louis M. Barattini as of the date of the decree appealed from; appellants shall pay one-fourth of the costs, and appellees three-fourths of the costs.*