501 A.2d 83

**John C. WALKER, III and John W. Gill, Jr., Substitute Trustees**

**v.**

**Mann T. WARD, et ux.**

**No. 276, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

Dec. 6, 1985.

Samuel S.D. Marsh (F. Robert Troll, Jr., and Ross, Marsh & Foster on brief), Bethesda, for appellants.

No Brief or Appearance by Appellees.

Argued before BISHOP, J., and MENCHINE, (W. ALBERT) and GETTY (JAMES S.), Associate Judges of the Court of Special Appeals (retired), Specially Assigned.

JAMES S. GETTY, Judge.

This case involves a mortgage foreclosure, ratification of the resulting sale, a substitution of purchasers, and an auditor's report reflecting the price paid by the substitute purchasers rather than the amount obtained at foreclosure.

The questions posed by this appeal include the following:

1.  After ratification of a foreclosure sale, may the trial court *sua sponte* change the sale price?

2.  After ratification of a foreclosure sale, may the trial court *sua sponte* subject the trustees to personal liability for a sum in excess of the sale price where a substitute purchaser has paid an amount for the property that exceeds the sum received at foreclosure and ratified by the court?

3.  Under Md. Rule W74 g 3, may the trial court, in the exercise of its discretion, inquire into the price at which property was resold by a private mortgage insurance company after settlement of the mortgagee's mortgage insurance claim?

The facts are not in dispute. The appellants are John C. Walker, III and John W. Gill, Jr., substitute trustees, and Permanent Mortgage Company. The appellees, Mann T. Ward and Jannie P. Ward, are the former owners of the property.[1] At the direction of Permanent Mortgage, the trustees instituted foreclosure proceedings on December 1, 1983, in the Circuit Court for Prince George's County. The Trustees' Report of Sale reflects that the property was bought in by Permanent Mortgage for the sum of $57,-000.00.[2] On March 30, 1984, the trial court ratified the sale and referred the case to the Auditor for the purpose of stating an account.

---

1.  The appellees did not except to the ratification of the sale and did not file a brief in this appeal.

2.  The indebtedness secured by the mortgage was subject to private mortgage insurance issued by Mortgage Guaranty Insurance Corporation (MGIC). After foreclosure, MGIC elected to pay off Permanent Mortgage and accept an assignment of Permanent Mortgage's interest in the property.

Thereafter, the proceedings in the Circuit Court were as follows:

1. On May 10, 1984, the trustees filed a suggested account.

2. On November 15, 1984, a petition was filed pursuant to Md. Rule W74 g 3 requesting that Allen E. and Mandaline J. Gilliam be substituted as purchasers.

3. By Order dated November 26, 1984, the trustees were authorized by the court to convey the property to the substituted purchasers.

4. On November 27, 1984, the Auditor's Report was filed showing the proceeds of sale as $86,500.00.

5. On February 8, 1985, a hearing was held and the trustees' exceptions were overruled; the Auditor's Report was ratified as filed showing a surplus of $28,955.08 payable to the original mortgagors, the Wards.[3]

We note that the Auditor's Report was preceded by a Memorandum signed by the court on November 16, 1984, stating:

"The Order as enclosed herewith (substitution of purchasers) will be signed as soon as counsel furnishes the exact dollar consideration being paid by petitioners Gilliam; any amount being paid by the Gilliams in excess of the sale price as originally reported ($57,000) will be credited to the defendant mortgagors on audit."

Whether the Auditor was aware of the court's position prior to filing his report is unclear. What is clear, however, is that the sale ratified by the court and referred to the Auditor lists the amount of sale as $57,000.00, not as $86,500.00. The final Order ratifying and confirming the sale to Permanent Mortgage has not been set aside or otherwise modified and the record does not disclose any basis for such action.

The procedure for conducting mortgage sales is set forth in Md. Rule W74; the action taken subsequent to sale is

---

3. The difference between $86,500 and $57,000 is $29,500. The record does not disclose the exact method of computation.

established by Rule BR6. After a sale has been reported by the person authorized to make the sale and public notice has been given that ratification will take place unless cause to the contrary is shown, the court then ratifies the sale pursuant to Rule BR6 b 4 which provides:

> "A final order of ratification of a sale shall be passed by the court after the time for responding to any order issued pursuant to subsection 2 of this section (objection to ratification) has expired, if the court is satisfied that the sale was fairly and properly made, and exceptions are not filed to the report of sale, or if exceptions are filed but overruled."

After final ratification, the papers in the proceeding are referred to the Auditor to state an account. Rule BR6 b 5. In mortgage foreclosure sales an audit is mandatory. Rule W74 e.

The procedure for conducting, reporting and ratifying a mortgage foreclosure was followed to the letter in this case. The non-protesting mortgagors could not attack the ratification and we hold, therefore, that the court may not *sua sponte* change the sale price after ratification in the absence of fraud or illegality. In *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511, 250 A.2d 646 (1969), quoting *Hersh v. Allnutt*, 252 Md. 513, 519, 250 A.2d 629 (1969), the Court of Appeals stated:

> "So the law is firmly established in Maryland that the final ratification of the sale of property in foreclosure proceedings is *res judicata* as to the validity of such sale, except in case of fraud or illegality and hence its regularity cannot be attacked in collateral proceedings."

*Accord, Kline v. Chase Manhattan Bank*, 43 Md.App. 133, 403 A.2d 395 (1979); *McKenna v. Sachse*, 225 Md. 595, 171 A.2d 732 (1961). In *Barrick, supra,* an objection to ratification was filed later on the same day after the court had ratified the sale. The Court of Appeals held that the trial court did not err in deciding that the objection to

ratification was untimely. By contrast, no objection to ratification has been even mentioned in the case *sub judice*.

■ The function of an auditor is that of a calculator and accountant for the court. *Green v. Green*, 182 Md. 571, 35 A.2d 238 (1944); *Robinson v. Brodsky*, 268 Md. 12, 298 A.2d 884 (1973). The office of auditor is analogous to a master. *Wooddy v. Wooddy*, 270 Md. 23, 309 A.2d 754 (1973). Rule 2–543 confers upon an auditor the power to regulate all proceedings, including:

1.  The issuance of a subpoena to compel the attendance of witnesses and the production of documents.
2.  Administering of oaths to witnesses.
3.  Ruling upon admissibility of evidence.
4.  Examining witnesses.
5.  Convening and adjourning hearings.
6.  Recommending sanctions to the court.
7.  Making findings of fact and conclusions of law.

The authority conferred on auditors as officers of the court does not extend, however, to stating an account based upon facts and figures that were not a part of the foreclosure sale ratified by the court.

Maryland Rule W74 g 3 provides:

"The court may, at any time after sale, upon *ex parte* petition and consent of the purchaser and person making the sale, authorize the conveyance to be made after final ratification to a substituted purchaser."

The legislative history of subsection 3 of the Rule reveals that it was adopted in its present form in 1958 as subsection (c) of former Rule 1391e 7. The Rule has not been amended or construed during the 27 years since its adoption.

The trial court granted the petition authorizing the conveyance to the substituted purchasers, but the court demanded that the consideration paid by the substituted buyers be shown in the audit rather than the original sum received at foreclosure. Thus, the ratified sale for $57,000 becomes a substituted sale for $86,500 and the surplus,

$28,955.08 was credited to the mortgagors. The result is clear error, initially by the auditor and ultimately by the court.

We point out that the Rule authorizing substitution of purchasers makes no mention of the consideration paid by the substituted persons. It matters not whether the price paid by substituted purchasers is the same, more, or less than the amount realized at the foreclosure sale. We think the reason that consideration is not mentioned is clear—a conveyance to substituted parties is a separate transaction and the consideration paid therein is not relevant to the foreclosure proceeding.

If, as the trial court seems to suggest, the consideration paid by the substituted parties becomes the amount includable in the audit of the foreclosure sale, an unfair result could readily occur. Let us reverse the figures and assume that the substitute purchasers pay $57,000 for the property that brought $86,500 at foreclosure with the sale being ratified at the $86,500 figure. If we were to follow the trial court's approach in this case, the mortgagors would be subject to a deficiency judgment of $28,955.08 notwithstanding the fact that a ratified foreclosure indicated a price of $87,500.00. Such a result would be totally unjust to a mortgagor. Requiring the purchaser at foreclosure to account for a profit on a conveyance to substituted purchasers is no less unfair to the mortgagee who purchases the property in good faith, for a reasonable sum, and then obtains another buyer.

The trustees, moreover, reported the sale of the property in the amount bid by the mortgagee, $57,000. They have no contractual relationship with the substituted purchasers, nor have they received any money from the substituted owners. The court would have the trustees personally liable for a surplus that they have neither received nor are entitled to receive; they did not conduct but one sale, for $57,000.

■ A purchaser mortgagee, furthermore, is not accountable to a mortgagor for profit, if any, made from a resale. *Kline v. Chase Manhattan Bank, supra; McKenna v. Sachse, supra; Walton v. Washington County Hospital Assn.*, 178 Md. 446, 13 A.2d 627 (1940); *Moss v. Annapolis Savings Institution*, 177 Md. 135, 138, 8 A.2d 881 (1939); *Pennsylvania Avenue Federal Savings & Loan Assn. v. Morris Fedder*, 175 Md. 127, 199 A. 785 (1938).

In *McKenna, supra,* the mortgagee bought in the property and, following ratification, sought a deficiency decree for $11,195.00 shown in the auditor's account. The mortgagors defended alleging that on resale the mortgagees made an $8,500.00 profit. The Court of Appeals held that after final ratification the sales price is not subject to collateral attack as to the adequacy of price. Continuing, the Court said:

> "It follows that the mortgagee-purchaser is not required to account to the mortgagor for a profit made upon a resale of the property." 225 Md. at 600, 171 A.2d 732 (citations omitted).

■ In summary, we hold that the court erred in directing the auditor to change the price received at foreclosure, and ratified by the court, to the amount paid by the substituted purchasers.

■ Further, we hold that where, as here, a mortgage foreclosure sale is ratified by the court without objection and the court authorizes the conveyance to be made to substituted purchasers, pursuant to Md. Rule W74 g 3, it is error for the court *sua sponte* to question the validity of such sale in the absence of fraud or illegality.

It follows, therefore, that the court erred in holding the trustees responsible for payment of an alleged surplus to the original mortgagors. We need not address the third issue raised herein.

JUDGMENT REVERSED. CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER ACTION CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANTS.