*Pablo Huertas, et ux. v. Carrie M. Ward*, *et al.*, No. 2929, Sept. Term 2018.  Opinion by Arthur, J.

**FORECLOSURE PROCEEDINGS—FINAL JUDGMENT**

Section 12-301 of the Courts and Judicial Proceedings Article of the Maryland Code authorizes a party to appeal from a final judgment entered in a civil case by the circuit court.  Under this statute, a party may appeal from an order ratifying a foreclosure sale, even if the order refers the matter to an auditor to state an account.  The ratification of a foreclosure sale is a final judgment as to the in rem aspects of a foreclosure proceeding, i.e. a final judgment as to rights in real property.  The process of referring the matter to an auditor is collateral to the foreclosure proceeding.

**FORECLOSURE PROCEEDINGS—DEFENSES**

To sufficiently raise a defense in a foreclosure case, a party must plead all elements of a valid defense with particularity.  General allegations are insufficient to require an evidentiary hearing on the merits.  In this case, a homeowner made general allegations of forgery but offered no factual support for those allegations.  The homeowner cited a provision of the federal Fair Debt Collection Practices Act but never sufficiently alleged any violation of that Act.  Because the homeowner failed to meet the minimum pleading standards, the circuit court properly declined to hold an evidentiary hearing on the merits of the alleged defenses.

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 2929

September Term, 2018
_____

PABLO HUERTAS, ET UX.

v.

CARRIE M. WARD, ET AL.
_____

Graeff,
Arthur,
Moylan, Charles E., Jr.
   (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Arthur, J.
_____

Filed:  October 27, 2020

This case involves a series of unsuccessful attempts to prevent a residential foreclosure. After the foreclosure sale, the Circuit Court for Montgomery County overruled a homeowner's exceptions and ratified the sale of the property.

The homeowner appealed, contending that the circuit court erred in denying his requests to prevent the foreclosure sale and its ratification. The substitute trustees have moved to dismiss the appeal, contending that the order ratifying the foreclosure sale is not an appealable order. Alternatively, the substitute trustees argue that the circuit court's rulings were correct, and thus that the judgment should be affirmed.

For the reasons discussed in this opinion, we shall deny the motion to dismiss this appeal and affirm the judgment of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

### A.      Initial Foreclosure Proceedings Under the Deed of Trust

On September 21, 2004, Bank of America, N.A., extended a loan to Pablo Huertas and Elsa Huertas. The loan was secured by a lien on their residence in Olney, Maryland. Mr. and Mrs. Huertas signed a promissory note and a deed of trust, which was recorded in the land records of Montgomery County.

The deed of trust included a power-of-sale provision, authorizing a trustee to sell the property in the event of a default under the terms of the promissory note. The deed of trust authorized Bank of America, "at its option, from time to time," to replace the named trustee with one or more successor trustees.

In January of 2008, Mr. and Mrs. Huertas stopped making monthly payments due under the promissory note. Several months later, a group of substitute trustees (none of

whom are parties to this case) initiated an action to foreclose on the property. The docket entries from that case indicate that a bankruptcy petition by Mr. or Mrs. Huertas resulted in a lengthy stay of the foreclosure proceedings. At the trustees' request, the court dismissed that case without prejudice in July of 2011.

Two years later, an officer of Bank of America executed a deed appointing Carrie Ward and five other persons as substitute trustees under the deed of trust. On April 17, 2014, the substitute trustees initiated a foreclosure action by filing an order to docket in the Circuit Court for Montgomery County. The exhibits to the order to docket included copies of the deed of trust, the promissory note, and the deed appointing the substitute trustees, along with affidavits affirming that those copies were true and accurate. In affidavits, officers of Bank of America affirmed that Federal National Mortgage Association was the "owner of the debt instrument," that Bank of America was the "servicer of the loan," and that the substitute trustees had "the right to foreclose."

### B.      Counterclaim in the Foreclosure Action

On May 7, 2014, Mr. and Mrs. Huertas, representing themselves, filed a pleading titled "Revised Counter Complaint to the Order of Docket Suit." Although they styled their pleading as a counterclaim, they did not demand damages from any defendant. Rather, they requested various documents and information, including the "original note," "proof of assignment . . . from the secured parties," the "legal authorization" of the Bank of America officer who had appointed the substitute trustees, a "validation of loss," and a "validation of debt." They requested "an evidentiary hearing or jury trial to address" what they called "these fraudulent matters."

Upon the filing of the counterclaim, the court filed an administrative order informing the parties that it would sever the counterclaim from the foreclosure case and that the counterclaim would proceed under a separate case number. The defendants in that separate case moved for dismissal, and no response was filed. The court granted the motion to dismiss on December 29, 2014. Mr. and Mrs. Huertas filed no notice of appeal in that case.

Meanwhile, in the foreclosure case, the substitute trustees moved to dismiss the counterclaim, arguing that it did not set forth any cognizable cause of action. Alternatively, the substitute trustees treated the counterclaim as a motion to stay the sale of the property and to dismiss the foreclosure action under Md. Rule 14-211. The substitute trustees argued that the pleading did not satisfy the formal requirements of that rule because it was not under oath or supported by affidavit.[1] The substitute trustees asked the court to deny Mr. and Mrs. Huertas's requests for relief without a hearing, arguing that the pleading did not state with particularity the basis of any valid defense in the foreclosure action.

For nearly three years, the court made no ruling regarding the counterclaim in the foreclosure case. During that time, Mrs. Huertas petitioned for bankruptcy relief. The substitute trustees filed a suggestion of bankruptcy, notifying the circuit court that the bankruptcy petition resulted in an automatic stay of the foreclosure case. The bankruptcy court eventually dismissed the bankruptcy case and terminated the automatic stay. The

---

[1] Mr. and Mrs. Huertas had signed the counterclaim in the presence of a notary, but their statements were not under oath or supported by an affidavit.

substitute trustees duly filed a notice informing the circuit court that the bankruptcy court had terminated the stay. Mr. and Mrs. Huertas then moved to strike that notice.

On May 8, 2017, the circuit court granted the substitute trustees' motion to dismiss the counterclaim and denied all relief sought in the counterclaim. One week later, the court denied the motion to strike the notice of termination of the automatic stay. The combined effect of these rulings allowed the substitute trustees to proceed with the foreclosure sale.

### C.     Mr. Huertas's Additional Efforts to Prevent the Foreclosure Sale

In the months that followed, Mr. Huertas made a series of attempts to prevent the sale of the property.[2] First, he moved to dismiss the foreclosure action based on what he called an "element of fraud." The court denied that motion. Mr. Huertas then moved to "strike, set aside, and vacate" the order denying his motion to dismiss the foreclosure action. The court denied that motion. Mr. Huertas then made a second motion for reconsideration.

Eventually, the substitute trustees sent a notice informing Mr. and Mrs. Huertas that an auction for sale of the property would occur on September 21, 2018. Two days before the scheduled auction, Mr. Huertas moved to "vacate and stop" the notice of impending foreclosure sale. Mr. Huertas also filed a line informing the circuit court that

---

[2] Maryland Rule 1-311(a) requires that "[e]very pleading and paper of a party who is not represented by an attorney shall be signed by the party." After the dismissal of the counterclaim, Mr. Huertas purported to act on behalf of "Defendants, Pablo Huertas, et al., proceeding pro se." Frequently, he signed those papers above a line reading "Pablo Huertas, et al., sui juris." Mrs. Huertas did not sign any of those papers. Consequently, it appears that Mr. Huertas was litigating on his own behalf.

4

he had filed an "emergency" petition in the Court of Appeals, seeking an injunction to prevent the sale. The Court of Appeals denied the emergency petition on the day that it was filed.

Despite Mr. Huertas's objections, the auction proceeded as scheduled. The substitute trustees sold the property to U.S. Bank National Association. The substitute trustees filed a report of sale and affidavit affirming that the sale had been fairly made.

On October 19, 2018, the circuit court entered an order denying Mr. Huertas's second motion for reconsideration. In the same order, the court denied "as moot" his other pending motions, including the motion to "vacate and stop" the notice of impending foreclosure sale. Within 30 days of the entry of that order, Mr. Huertas filed his first notice of appeal.

### D.    <u>Ratification of the Foreclosure Sale</u>

After the court informed Mr. Huertas of his right to file exceptions, he made a motion "in vigorous opposition" to ratification of the sale. Among other things, he asserted that the auction was a "sham" and that the substitute trustees had submitted "forged" documents throughout the case. The circuit court treated the motion as his exceptions to the sale and scheduled an exceptions hearing. Shortly before the hearing, Mr. Huertas made another motion, asking the court to "strike" the auction at which the property had been sold.

The court heard arguments from Mr. Huertas and counsel for the substitute trustees at the exceptions hearing on January 7, 2019. At the end of the hearing, the court concluded that Mr. Huertas had not demonstrated any basis for setting aside the

foreclosure sale.

After the hearing, the circuit court entered an order overruling Mr. Huertas's exceptions, denying his other pending motions, and ratifying the foreclosure sale. In the same order, the court referred the matter to an auditor to determine the distribution of proceeds from the sale.

Within 30 days after the entry of that order, Mr. Huertas filed his second notice of appeal. The present case arises from his first and second notices of appeal.

### E. Developments During Pendency of This Appeal

Shortly after Mr. Huertas filed his second notice of appeal, the auditor filed a report with the court. Mr. Huertas filed exceptions to that report. The court overruled his exceptions and ratified the auditor's report. Mr. Huertas moved to vacate the order ratifying the auditor's report, and the court denied his motion. No party appealed from the order ratifying the auditor's report or from the order refusing to vacate that order.

Meanwhile, the purchaser, U.S. Bank, moved for a judgment awarding it possession of the property. Mr. Huertas opposed that motion. After a hearing, the court granted U.S. Bank's motion. Mr. Huertas then filed a third notice of appeal. He also moved to alter or amend the order awarding possession to U.S. Bank. The court denied that motion, prompting him to file a fourth notice of appeal.

The third and fourth notices of appeal resulted in a separate case in this Court, No. 816, September Term 2019. This Court dismissed that appeal on November 18, 2019, based on Mr. Huertas's failure to file an appellate brief.

6

## MOTION TO DISMISS APPEAL

In their appellate brief, the substitute trustees made a motion to dismiss this appeal. The substitute trustees contend that this appeal was premature when it was taken and therefore must be dismissed. Mr. Huertas submitted no response to that motion.

With exceptions not implicated here, a notice of appeal must be filed "within 30 days *after* entry of the judgment or order from which the appeal is taken." Md. Rule 8-202(a) (emphasis added). Ordinarily, this Court is required to dismiss an appeal, on motion or on its own initiative, if the appeal is not allowed by law or if the notice of appeal was not filed within the prescribed time period. Md. Rule 8-602(b).[3]

This case arises from two separate notices of appeal. Mr. Huertas filed his first notice of appeal within 30 days of the order entered on October 19, 2018. In that order, the circuit court denied several motions in which he had sought to prevent the sale of the property. He filed his second notice of appeal within 30 days of the order entered on January 7, 2019. In that order, the court overruled his exceptions to the sale and then ratified and confirmed the sale.

---

[3] In *Rosales v. State*, 463 Md. 552, 568 (2019), the Court "recognize[d] that Maryland Rule 8-202(a) is a claim-processing rule, and not a jurisdictional limitation on this Court." "Despite this recognition," however, "Maryland Rule 8-202(a) remains a binding rule on appellants, and this Court will continue to enforce the Rule." *Id.* Under *Rosales*, it is not "inappropriate for a court to dismiss an untimely appeal," but "the appropriate grounds for dismissal" are "for a failure to comply with the Maryland Rules," and not "for lack of jurisdiction." *Id.* "Further, as the Rule is not jurisdictional, a reviewing court must examine whether waiver or forfeiture applies to a belated challenge to an untimely appeal." *Id.*

7

The substitute trustees argue that both notices of appeal were "too early." The substitute trustees contend that, if Mr. Huertas wished to challenge the circuit court's rulings in the foreclosure case, he needed to wait until after the court entered the order ratifying the auditor's report. The substitute trustees further argue that, because Mr. Huertas failed to appeal from that order, it is now "too late" for him to note an appeal.

By statute, "a party may appeal from a final judgment entered in a civil or criminal case by a circuit court." Md. Code (1974, 2013 Repl. Vol.), § 12-301 of the Courts and Judicial Proceedings Article ("CJP"). In general, an order is not a final judgment unless it fully adjudicates all claims in the case by and against all parties to the case. *See* Md. Rule 2-602(a). An interlocutory order, i.e. any order that is not a final judgment, ordinarily is not appealable. *See, e.g.*, *Baltimore Home Alliance, LLC v. Geesing*, 218 Md. App. 375, 383 (2014). The purpose of requiring parties to await final judgment before taking an appeal is to avoid "piecemeal appeals," which may result in disruption and inefficiency. *See, e.g.*, *Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Comm'rs*, 457 Md. 1, 42-43 (2017).[4]

The Court of Appeals has explained that, to qualify as a final judgment, an order "must be 'so final as either to determine *and conclude* the rights involved or to deny the appellant the means of further prosecuting or defending his or her rights and interests in

_____

[4] There are only three exceptions to the final judgment requirement: (1) appeals from interlocutory orders specifically authorized by statute; (2) appeals permitted when a circuit court enters final judgment under Md. Rule 2-602(b); and (3) appeals allowed under the collateral order doctrine. *See, e.g.*, *In re O.P.*, 470 Md. 225, 250 (2020) (footnote omitted) (citing *Salvagno v. Frew*, 388 Md. 605, 615 (2005)).

8

the subject matter of the proceeding.'" *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. 289, 299 (2015) (quoting *Rohrbeck v. Rohrbeck*, 318 Md. 28, 41 (1989)) (emphasis in original); *accord Monarch Acad. Baltimore Campus, Inc. v. Baltimore City Bd. of Sch. Comm'rs*, 457 Md. at 43. In other words, the order "must be a complete adjudication of the matter in controversy, except as to collateral matters, meaning that there is nothing more to be done to effectuate the court's disposition." *Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. at 299. "Such an order has been described as one that has the effect of 'put[ting] the [party] out of court.'" *Id.* (quoting *McCormick v. St. Francis de Sales Church*, 219 Md. 422, 426-27 (1959)).

Foreclosure cases do not neatly fit the ordinary model of civil litigation in which the definition of a final judgment is usually applied. A foreclosure action under a power of sale "is 'intended to be a summary, in rem proceeding[.]'" *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 726 (2007) (quoting *G.E. Capital Mortg. Servs., Inc. v. Levenson*, 338 Md. 227, 245 (1995)); *see also Pulliam v. Dyck-O'Neal, Inc.*, 243 Md. App. 134, 143 (2019) (describing foreclosure under power of sale as "a summary *in rem* proceeding that grants the mortgagee the power to dispose of the property"). The primary object of the proceeding is to determine the rights of all persons as to their interests in the subject property. *See Fairfax Sav., F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1, 20 (1995).

Foreclosure cases do not begin with the filing of a complaint but with the filing of an "order to docket." Md. Rule 14-207(a)(1). The order to docket must be accompanied by copies of various documents needed to demonstrate that the plaintiff has the present

9

right to foreclose.  *See* Md. Rule 14-207(b).  In a strict sense, "an order to docket is not a pleading," because it does not "raise issues between the parties" and need not "contain *any* factual allegations."  *Pacific Mortg. & Inv. Grp., Ltd. v. LaGuerra*, 81 Md. App. 28, 39 (1989) (citing *Saunders v. Stradley*, 25 Md. App. 85, 95 (1975)).

The Maryland Rules provide "two avenues by which a borrower may challenge a foreclosure sale."  *Hood v. Driscoll*, 227 Md. App. 689, 693 (2016).  "One is a motion to dismiss the foreclosure action or stay or enjoin a threatened sale; the other is to file exceptions to a sale that already has occurred."  *Id.* at 693-94.

"Before a foreclosure sale takes place," a borrower "may file a motion to 'stay the sale of the property and dismiss the foreclosure action.'"  *Bates v. Cohn*, 417 Md. 309, 318 (2010) (quoting Md. Rule 14-211(a)(1)).  The function of such a motion is "to raise a challenge to the foreclosure action itself[,]" i.e., a challenge "to whether there should be a sale at all."  *Hood v. Driscoll*, 227 Md. App. at 694.  "The borrower, in other words, may petition the court for injunctive relief, challenging 'the validity of the lien or . . . the right of the [plaintiffs] to foreclose in the pending action.'"  *Bates v. Cohn*, 417 Md. at 318-19 (quoting Md. Rule 14-211(a)(3)(B)).

A borrower may take an immediate appeal from an order denying a motion to stay the sale of the property and dismiss a foreclosure action, even though the order is not a final judgment.  CJP § 12-303, a statutory exception to the final judgment requirement, authorizes appeals from certain types of interlocutory orders entered in a civil case.  Among those interlocutory orders is an order "[r]efusing to grant an injunction[.]"  CJP § 12-303(3)(iii).  Because a stay is one type of injunction, an order denying a request for a

10

stay of the sale of the property is appealable as an order refusing to grant an injunction. *See Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 540 n.2 (2013); *Tower Oaks Blvd., LLC v. Procida*, 219 Md. App. 376, 390 n.1 (2014).

Even after a purchaser buys a property at a foreclosure sale, the transaction remains incomplete until the sale is approved by the court. *See Simard v. White*, 383 Md. 257, 313 (2004) (citing *Merryman v. Bremmer*, 250 Md. 1, 8 (1968)). Borrowers may challenge a foreclosure sale by filing exceptions, setting forth any allegations of irregularities in the sale. *See* Md. Rule 14-305(d)(1). Irregularities that may justify setting aside a sale include deficiencies in the advertisement of sale, conduct that inhibited bidding on the property, or an unconscionable sale price. *Bates v. Cohn*, 417 Md. at 321. When the court finally ratifies a sale, the purchaser acquires complete equitable title to the property and becomes the substantial owner of the property, retroactive to the date of the sale. *Simard v. White*, 383 Md. at 313.[5] Among other things, the purchaser then becomes entitled to seek possession of the property. *See Empire Props., LLC v. Hardy*, 386 Md. 628, 650 (2005).

The Court of Appeals has held that "[a]n order ratifying a sale is a judgment" within the meaning of the rule limiting a circuit court's power to revise an enrolled judgment, "because it is an 'order of court final in its nature.'" *Hughes v. Beltway Homes, Inc.*, 276 Md. 382, 384 (1975) (citing *Hersh v. Allnutt*, 252 Md. 513, 519 (1969),

---

[5] Between the time when the purchaser accepts the trustee's offer of sale and the ratification of the sale by the court, the purchaser has only "'inchoate equitable title.'" *Simard v. White*, 383 Md. at 313 (quoting *Merryman v. Bremmer*, 250 Md. at 8).

11

and *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. 507, 511 (1969)); *see also Billingsley v. Lawson*, 43 Md. App. 713, 718 (1979). "Thus, after final ratification of [a] foreclosure sale, [a] trial court [is] authorized to review the validity of the sale only upon a finding of fraud, mistake or irregularity." *Bank of New York Mellon v. Nagaraj*, 220 Md. App. 698, 708 (2014) (citing *Manigan v. Burson*, 160 Md. App. 114, 120 (2004)). "'[T]he final ratification of the sale of property in foreclosure is *res judicata* as to the validity of such sale, . . . and hence its regularity [ordinarily] cannot be attacked in collateral proceedings.'" *Manigan v. Burson*, 160 Md. App. at 120 (quoting *Ed Jacobsen, Jr., Inc. v. Barrick*, 252 Md. at 511) (further quotation marks omitted); *see also Walker v. Ward*, 65 Md. App. 443, 447 (1985).

Consistent with these holdings, Maryland appellate courts repeatedly have decided appeals from orders ratifying foreclosure sales. *E.g., Shepherd v. Burson*, 427 Md. 541, 550 (2012); *Maddox v. Cohn*, 424 Md. 379, 382 (2012); *Fagnani v. Fisher*, 418 Md. 371, 377 (2011); *Bates v. Cohn*, 417 Md. at 318; *Hood v. Driscoll*, 227 Md. App. at 693; *Fisher v. Ward*, 226 Md. App. 149, 153 (2015); *Hobby v. Burson*, 222 Md. App. 1, 7-8 (2015); *Granados v. Nadel*, 220 Md. App. 482, 487 (2014); *Johnson v. Nadel*, 217 Md. App. 455, 464 (2014); *Svrcek v. Rosenberg*, 203 Md. App. 705, 719 (2012); *Jones v. Rosenberg*, 178 Md. App. 54, 63 (2008).[6]

---

[6] On an appeal taken after an order ratifying the sale, the appellate court may review a prior interlocutory order denying a motion to stay the sale and dismiss the foreclosure action. *Granados v. Nadel*, 220 Md. App. at 497 n.13.

On the other hand, in *McLaughlin v. Ward*, 240 Md. App. 76 (2019), this Court dismissed an appeal taken by the purchaser at a foreclosure sale, because the purchaser had appealed before the court ratified the sale. The Court explained: "In a foreclosure case, a court does not enter a final judgment *at least* until it has ratified the foreclosure sale." *Id.* at 83 (emphasis added). As of the date of the purchaser's notice of appeal, "the circuit court had neither ratified the foreclosure sale, nor referred the matter to an auditor, nor adjudicated any exceptions to an auditor's report." *Id.* at 84. The purchaser, therefore, had taken an appeal before the entry of final judgment. *Id.*

In dicta, this Court noted that "if the court refers the matter to an auditor to state an account, as it may under Rule 14-305(f), it *may* not enter a final judgment until it has adjudicated any exceptions to the auditor's report." *McLaughlin v. Ward*, 240 Md. App. at 83 (emphasis added) (citing *Baltimore Home Alliance, LLC v. Geesing*, 218 Md. App. 375, 383 n.5 (2014)). In other words, the *McLaughlin* Court identified a possibility that, in some circumstances, a final judgment might not come into being until the court has adjudicated exceptions to an auditor's report, if exceptions are filed.

Relying on this dicta from *McLaughlin*, the substitute trustees argue that an order ratifying a foreclosure sale is not a final judgment and is therefore not appealable. According to the substitute trustees, the final judgment in a foreclosure case is the order adjudicating any exceptions to the auditor's report. The substitute trustees argue that *McLaughlin* is "dispositive" on this point. To the contrary, that opinion declined to decide whether the ratification of the foreclosure sale or the adjudication of the

13

exceptions to the auditor's report represented the final judgment in that foreclosure case, because the appellant had noted his appeal before either of those orders.[7]

In our assessment, an order ratifying a foreclosure sale is a final judgment as to any rights in the real property, even if the order refers the matter to an auditor to state an account. As mentioned previously, a foreclosure action is principally an in rem proceeding concerning rights in real property. Even though the foreclosure case continues after the ratification of the sale, the proceeding no longer involves an adjudication of rights in the real property. The ratification of the sale has the practical effect of putting the parties out of court, as they can no longer prosecute or defend their rights with respect to the property; therefore, an order ratifying a foreclosure sale is a final judgment with respect to the in rem aspects of a foreclosure proceeding. *See Fairfax Savings, F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. at 16-17. The process of referring the case to an auditor and resolving any exceptions to the auditor's report is

---

[7] Both *McLaughlin* and the case on which it principally relies, *Baltimore Home Alliance, LLC v. Geesing*, 218 Md. App. 375 (2014), involve unusual factual scenarios, in which a purchaser challenged the economic aspects of a foreclosure proceeding. In *McLaughlin*, 240 Md. App. at 81, the purchaser appealed from an order denying its motion to abate the purchase price. The appeal was premature because the court had not even ratified the foreclosure sale. *Id*. at 83-84. Indeed, if the court ultimately decided not to ratify the sale, the complaint about the purchase price would become moot. *See id.* at 84. In *Baltimore Home Alliance*, 218 Md. App. 378-80, the purchaser appealed from an order "forfeiting" its deposit because it had failed to go to closing within 10 days after the ratification of the foreclosure sale; the appeal was premature because it was unclear whether the deposit had truly been forfeited (in the sense that it was lost for good), or whether the deposit would simply be set off against the losses, if any, that the substitute trustees might incur at a subsequent foreclosure sale. *Id.* at 381-83. Neither of these unusual cases resembles the paradigmatic foreclosure appeal, in which an aggrieved homeowner, like Mr. Huertas, challenges the sale of a property.

14

collateral to the foreclosure proceeding, and thus it does not affect the finality of an order ratifying the foreclosure sale. *See Metro Maint. Sys. South, Inc. v. Milburn*, 442 Md. at 299 (recognizing that an order may be a final judgment despite the pendency of collateral matters).

"The function of an auditor [of a foreclosure sale] is that of a calculator and accountant for the court." *Walker v. Ward*, 65 Md. App. at 448. The opportunity to file exceptions to the auditor's report is not an additional opportunity to challenge the adjudication of rights in the real property that occurs in the ratification of the foreclosure sale. *See Hohensee v. Minear*, 259 Md. 603, 607 (1970) (per curiam). Exceptions to the auditor's report are "directed not at the right to sell the property or to the conduct of the sale itself, but to the allowance or disallowance of expenses of the sale or the distribution of net proceeds." *Hood v. Driscoll*, 227 Md. App. at 694 n.1. When a court adjudicates exceptions to an auditor's report, its decision represents a second judgment, from which any party aggrieved by that ruling can appeal. *See Fetting v. Flanigan*, 185 Md. 499, 506 (1946) (recognizing that, although an order ratifying an auditor's report and account "may not constitute a part of the final judgment on the whole case," it is "considered as a judgment conclusive of the matter to which it relates") (citation and quotation marks omitted); *Kirsner v. Cohen*, 171 Md. 687, 689 (1937) ("[t]he final ratification of the audit . . . [is] in its nature a final order [and], if objectionable there should have been an appeal").

Consequently, Mr. Huertas was entitled to appeal from the order entered on January 7, 2019, which ratified the sale of the property. We deny the substitute trustees'

15

motion to dismiss his appeal from that order.

In their motion to dismiss, the substitute trustees also argue that Mr. Huertas had no right to appeal from the order entered on October 19, 2018. Once again, we disagree.

In that order, the circuit court expressly denied the relief requested in five different motions or responses by Mr. Huertas. Although none of his submissions were particularly clear, at least one motion included what is, fairly read, a request to stay the foreclosure sale. In a motion titled "Motion to Vacate and Stop Alleged 'Notice of Impending Foreclosure Sale,'" Mr. Huertas asked the court to "[v]acate all matters ruled on" in the case and to "[d]ismiss with [p]rejudice" the foreclosure action.

Generally, this Court liberally construes pleadings filed by self-represented litigants. *See Mitchell v. Yacko*, 232 Md. App. 624, 643 n.12 (2017) (citing *Simms v. Shearin*, 221 Md. App. 460, 480 (2015)). Despite whatever deficiencies the motion might have had, the motion did enough to communicate to the court and to the substitute trustees that Mr. Huertas was asking the court to stop the foreclosure sale from occurring. Indeed, in their appellate brief, the substitute trustees acknowledge that the court denied what were "essentially motions to stay or strike the foreclosure sale[.]" Mr. Huertas's request to stay a foreclosure sale, i.e. to prohibit parties from selling a property, was a request for an injunction. *See Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. at 540 n.2; *Tower Oaks Blvd., LLC v. Procida*, 219 Md. App. at 390 n.1. Accordingly, the order was immediately appealable to the extent that it denied his request for injunctive relief. *See Ettridge v. TSI Grp., Inc.*, 314 Md. 32, 40 (1988).

In sum, Mr. Huertas's first appeal was a timely appeal from an interlocutory order

16

refusing to grant an injunction.  His second appeal was a timely appeal from the final

judgment ratifying the foreclosure sale.  Therefore, we deny the substitute trustees'

motion to dismiss this appeal.[8]

**DISCUSSION**

Mr. Huertas signed his two notices of appeal on behalf of "Pablo Huertas, et al."

The signature page of his appellate brief reads: "For The Family Interest Of Pablo

Huertas."  Because Mrs. Huertas did not sign either the notices of appeal or the appellate

brief, Mr. Huertas represents himself alone in this appeal.  *See* Md. Rule 1-311(a)

(requiring that any pleading or paper on behalf of an unrepresented party must be signed

by that party).

In his brief, Mr. Huertas presents a single question, which we quote verbatim:

> Did the lower court make an error in not following the procedural rules set
> forth by the Maryland Legislature by allowing alleged attorneys for alleged
> debt collectors to frustrate justice and steal the property of unsuspecting
> victims through and by the use of forged falsified orders to docket and
> falsified pleadings meant to undermine the integrity of our state and federal
> court system[?]

In essence, Mr. Huertas challenges whether the substitute trustees had the right to

foreclose.  Throughout his brief, Mr. Huertas makes sweeping accusations that the

substitute trustees committed fraud and other misconduct.  According to Mr. Huertas, the

substitute trustees (along with other attorneys in the same law firm as the substitute

---

[8] The substitute trustees do not argue that the appeal has become moot on the ground that the property was sold to a bona fide purchaser after Mr. Huertas failed to obtain a stay of the circuit court's decision.  *See*, *e.g.*, *Baltrotsky v. Kugler*, 395 Md. 468, 474-77 (2006); *see also Julian v. Buonassissi*, 414 Md. 641, 660-65 (2010).  For that reason, we do not consider the issue of mootness.

17

trustees and another attorney who represented the purchaser) engaged in a "civil conspiracy" to "steal" his property through the use of countless "forged documents." He criticizes the circuit court for "ignor[ing]" what he calls the "proper defenses" that he raised in the action.

In foreclosure proceedings, borrowers may raise defenses through a motion to stay the sale of the property and dismiss the foreclosure action under Md. Rule 14-211. The motion must "(A) be under oath or supported by affidavit; (B) state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action; [and] (C) be accompanied by any supporting documents or other material in the possession or control of the moving party." Md. Rule 14-211(a)(3).

The court may deny the motion, with or without a hearing, if the motion "does not on its face state a valid defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action." Md. Rule 14-211(b)(1)(C). The court is required to hold a hearing on the merits of an alleged defense only if the motion sufficiently states a valid defense and if the other requirements of the Rule have been satisfied. *See* Md. Rule 14-211(b)(2)(C). Overall, this Rule "attempts to strike a fair balance by providing borrowers . . ., who have a legitimate defense to the foreclosure, a reasonable and practical opportunity to raise the defense, but not allowing for frivolous motions intended solely to delay the proceeding." *Bechamps v. 1190 Augustine Herman, LC*, 202 Md. App. 455, 461-62 (2011).

When a circuit court declines to hold an evidentiary hearing on the merits of the

18

defense asserted in a foreclosure action, this Court reviews the decision to determine whether it was legally correct. *See Mitchell v. Yacko*, 232 Md. App. 624, 641 (2017); *Buckingham v. Fisher*, 223 Md. App. 82, 93 (2015).

As a potential defense, Mr. Huertas claims that some or all of the documents that the substitute trustees submitted in the foreclosure action were "forged." Generally speaking, "a party cannot institute a foreclosure upon forged documents." *Mitchell v. Yacko*, 232 Md. App. at 641. "A forged document is '[a] false or altered document made to look genuine by someone with the intent to deceive.'" *Id.* at 627 n.2 (quoting BLACK'S LAW DICTIONARY 766 (10th ed. 2014)); *see also Buckingham v. Fisher*, 223 Md. App. at 93 (defining forgery, when claimed as a defense to a foreclosure, "as [1] a false making or material alteration, [2] with intent to defraud, [3] of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability") (citation and quotation marks omitted). Foreclosure proceedings are equitable in nature, and equitable relief should not be granted if "'the particular matter for which a litigant seeks equitable relief'" is "'marred by any fraudulent, illegal, or inequitable conduct.'" *Mitchell v. Yacko*, 223 Md. App. at 637-38 (quoting *Wells Fargo Home Mortg., Inc. v. Neal*, 398 Md. 705, 730 (2007)) (further quotation marks and citations omitted).

Accordingly, "a well-articulated forgery defense" (*Buckingham v. Fisher*, 223 Md. App. at 93) may be a valid defense in a foreclosure case. For example, in *Mitchell v. Yacko*, 232 Md. App. at 648, a self-represented litigant sufficiently alleged that a deed of trust filed with the order to docket was a forgery. The litigant submitted an affidavit stating that the lender had voided the same deed of trust at her request. *Id.* at 628. The

litigant also provided a copy of the voided version of the document to demonstrate, by a side-by-side comparison with the version submitted with the order to docket, how that document had been materially altered. *Id.* at 642. Under those circumstances, the litigant was entitled to an evidentiary hearing on the merits of that defense. *Id.* at 643.

To sufficiently raise such a defense, a party must satisfy the minimum pleading standards for raising defenses in a foreclosure action. *See Buckingham v. Fisher*, 223 Md. App. at 93. "[U]nder Rule 14-211, a party must plead all elements of a valid defense with particularity." *Id.* at 91. In this context, "particularity means that each element of a defense must be accompanied by some level of factual and legal support." *Id.* at 92. "General allegations will not be sufficient to raise a valid defense requiring an evidentiary hearing on the merits." *Id.*

Nothing that Mr. Huertas submitted in the circuit court ever satisfied this particularity requirement. Only occasionally did he even identify any specific documents that he asserted to be "forged" or "fraudulent." He never alleged any factual basis or identified any evidentiary support for a conclusion that any person falsely made or materially altered all or part of any particular document with an intent to defraud. The circuit court was not required to hold an evidentiary hearing regarding these "[g]eneral allegations" of forgery. *See Buckingham v. Fisher*, 223 Md. App. at 92.

Mr. Huertas raised his allegations of forgery not only before the foreclosure sale but also after the sale, in his motion opposing the ratification of the sale. The circuit court treated his motion as exceptions to the sale and afforded him a hearing on the matters raised in his motion. At that hearing, Mr. Huertas asserted that he was not

20

required to "bring anything as evidence" to support his accusations because, he said, the substitute trustees had "the burden of proof." Counsel for the substitute trustees correctly pointed out, however, that the party objecting to ratification of the sale bears the burden of demonstrating that the sale was invalid. *See Greenbriar Condo., Phase I Council of Unit Owners, Inc. v. Brooks*, 387 Md. 683, 742 (2005); *Jones v. Rosenberg*, 178 Md. App. 54, 69 (2008); *Hurlock Food Processors, Inv. Assocs. v. Mercantile-Safe Deposit & Trust Co.*, 98 Md. App. 314, 330-31 (1993). Because Mr. Huertas failed to satisfy that burden, the court properly declined to set aside the sale.

As a second potential defense, Mr. Huertas appears to argue that the substitute trustees had no right to foreclose unless they produced "original documents in wet ink[.]" The relevant rules governing foreclosure under a power of sale include no such requirement. Rather, an order to docket must be accompanied by copies of the documents that demonstrate the plaintiffs' right to foreclose, with supporting affidavits affirming that those copies are true and correct. *See* Md. Rule 14-207(b).

In his brief and in his submissions to the circuit court, Mr. Huertas cited 15 U.S.C. § 1692g, a provision of the federal Fair Debt Collection Practices Act, as the basis for his demand for original documents. That statute requires a "debt collector" to make certain disclosures upon making an "initial communication with a consumer in connection with the collection of any debt[.]" 15 U.S.C. § 1692g(a). The statute further permits a consumer to notify the debt collector in writing that the debt or a portion of it is in dispute. 15 U.S.C. § 1692g(b). If the consumer gives such notice, the debt collector must cease collection of the debt until the debt collector obtains "verification of the debt"

21

from the original creditor. *Id.*

In his various submissions, Mr. Huertas never sufficiently alleged any violation of the Fair Debt Collection Practices Act. Although he referred to the substitute trustees as "debt collectors," he failed to allege any factual basis to conclude that the substitute trustees qualify under the statutory definition of that term. *See* 15 U.S.C. § 1692a(6). He has not alleged that the substitute trustees failed to disclose the required information after something that would qualify as an "initial communication" under the Act.[9] Nor has he alleged that he notified the substitute trustees in writing that a debt or any portion of it was in dispute. Consequently, the circuit court was not required to hold an evidentiary hearing on the merits of that alleged defense.

In his brief, Mr. Huertas also complains that the court improperly "restrict[ed]" his "right to file counterclaims" against the substitute trustees.[10] He asks this Court to remand the case to the circuit court for a jury trial and a determination of damages on his counterclaims. Just as Mr. Huertas's submissions failed to meet the pleading standards for raising a defense to the foreclosure, those submissions also failed to meet the pleading

---

[9] A "formal pleading in a civil action" is not treated as an "initial communication" between the debt collector and the consumer. 15 U.S.C. § 1692g(d). Courts have held that "[t]his 'broad exclusion' applies not only to 'the formal documents that make up a standard pleading,' but also to 'any communication forming any part' thereof, including 'exhibits attached to a complaint.'" *Cohen v. Rosicki, Rosicki & Assocs., P.C.*, 897 F.3d 75, 89 (2d Cir. 2018) (quoting *Carlin v. Davidson Fink LLP*, 852 F.3d 207, 213 (2d Cir. 2017)).

[10] The Maryland Rules do not expressly prohibit the filing of a counterclaim in a foreclosure proceeding. *See Fairfax Savings, F.S.B. v. Kris Jen Ltd. P'ship*, 338 Md. 1, 21 (1995).

standards for a counterclaim. The circuit court correctly granted the motion to dismiss

the "counterclaim" for failure to state a claim upon which relief can be granted.

**APPELLEES' MOTION TO DISMISS
APPEAL DENIED.  JUDGMENT OF THE
CIRCUIT COURT FOR MONTGOMERY
COUNTY AFFIRMED.  COSTS TO BE
PAID BY APPELLANT.**