*Javonna Andrews v. Laura O'Sullivan, et al.,* Nos. 1018 and 1553, Sept. Term 2021
Opinion by Wells, C. J.

**FORECLOSURES—DENIAL OF A MOTION TO STAY—FINAL JUDGMENTS—INTERPLAY BETWEEN RULE 8-202, RULE 2-534, AND COURTS AND JUDICIAL PROCEEDINGS ARTICE SECTION 12-303**

We hold that the denial of the motion to stay was an appealable interlocutory order, final in nature, under Courts and Judicial Proceedings Article of the Annotated Code of Maryland, § 12-303 (3)(iii). The time to note an appeal was tolled until the court disposed of appellant's subsequently filed Rule 2-534 motion to alter or amend. Consequently, appellant's appeal in No. 1018, filed within 30 days of the denial of the motion to alter or amend, was timely.

Circuit Court for Prince George's County
Case No. CAEF-19-18450

REPORTED

IN THE APPELLATE COURT

OF MARYLAND*

Nos. 1018 and 1553

September Term, 2021

_____

JAVONNA ANDREWS

v.

LAURA O'SULLIVAN, ET AL.

_____

Wells, C.J.,
Graeff,
Arthur,

JJ.

_____

Opinion by Wells, C.J.

_____

Filed:  December 29, 2022

Pursuant to the Maryland Uniform Electronic Legal Materials
Act (§§ 10-1601 et seq. of the State Government Article) this
document is authentic.



Gregory Hilton, Clerk

* At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Special Appeals of Maryland to the Appellate Court of Maryland. The name change took effect on December 14, 2022.

In this consolidated appeal, appellant, Javonna Andrews, challenges a foreclosure action in which her home was sold by appellants, Laura H. G. O'Sullivan, Rachel Kiefer, Michael T. Cantrell, and Erin N. Shaffer (hereinafter "Substitute Trustees"). In her appeal, Andrews presents the following questions:

1. Did the trial court err when it allowed the foreclosure action to move forward when appellees repeatedly failed to provide the required pre-mediation documentation as required under law?

2. Did the trial court err when it failed to stay the foreclosure action until all loss mitigation options had been exhausted?

3. Did the trial court err when it failed to dismiss the foreclosure action due to affidavits provided by appellees that contained false information?

4. Did the trial court err when it failed to dismiss the foreclosure action due to appellees' "unclean hands"?

**FACTUAL AND PROCEDURAL BACKGROUND**

In December 2006, Andrews executed a promissory note and deed of trust in the amount of $260,000 for the property located at 7611 Swan Terrace in Hyattsville, Maryland. In February 2018, Andrews defaulted on the loan, and the Substitute Trustees filed a foreclosure proceeding on June 12, 2019. On December 20, 2019, Andrews filed a Motion to Stay and Dismiss the Foreclosure Proceedings, Request for Discovery and Request for Hearing ("Motion to Stay"). On January 13, 2020, the circuit court issued an order setting Andrews' motion for a hearing and staying any pending sale in the meantime. However, because of a docketing error, the Substitute Trustees were unaware of the court's order, and subsequently sold the property the following day, on January 14, 2020. At a hearing on February 11, 2020, the court vacated the sale of the house, stayed the foreclosure

action, and set Andrews' Motion to Stay in for a hearing. On April 1, 2020, the court issued an order correcting the docket entry for February 11, 2020 to stay the ratification of the sale instead of vacating the sale.

Due in part to the COVID-19 pandemic, the ratification of the sale was stayed for over a year. The court finally held a hearing on Andrews' Motion to Stay on May 11, 2021, concluding by denying Andrews' motion. On May 21, 2021, Andrews filed a "Motion for Reconsideration or in the Alternative Motion to Alter or Amend Judgment Pursuant to Md. Rule 2-534." On July 7, 2021, the court denied Andrews' motion, and the denial was docketed on August 4, 2021. Andrews then filed a notice of appeal with the circuit court on September 2, 2021 (Appeal 1018). On November 15, 2021, the court ratified the sale. Andrews then filed another notice of appeal on November 23, 2021 (Appeal 1553). Additional facts will be discussed below.

## DISCUSSION

### I. Andrews' Appeals are Properly Before Us

In their brief, the Substitute Trustees make several arguments urging us to dismiss both appeals. First, concerning Appeal 1018, the Substitute Trustees argue that Andrews' notice of appeal was untimely, and we are therefore without jurisdiction.[1] And in Appeal

---

[1] In *Rosales v. State*, 463 Md. 552 (2019), the Court of Appeals, now the Supreme Court of Maryland, *see* footnote 7, held that Rule 8-202(a) "is a claim-processing rule, and not a jurisdictional limitation on this Court." *Id.* at 568. However, even though it may not be jurisdictional, filing a timely notice of appeal is still binding on appellants, and an untimely appeal will be dismissible under Rule 8-602(b). If we were to dismiss for untimeliness, it would not be for want of jurisdiction.

2

1553, the Substitute Trustees argue that the appeal is an "improper post-sale appeal seeking to contest pre-sale events." We disagree with the Substitute Trustees' arguments and decline to dismiss either appeal.

As for appeal No. 1018, the Substitute Trustees contend that Andrews' notice of appeal, filed on September 2, 2021, was not filed within 30 days of the court's denial of the Motion to Stay, as required by Rule 8-202(a).[2] Further, Substitute Trustees assert that Andrews' Rule 2-534[3] motion to alter or amend did not toll the time to appeal under Rule 8-202(c),[4] because 2-534 motions are reserved for "final judgments" and the court's denial of a stay is not a final judgment. We disagree.

This issue rests on whether "judgment," as used in Rule 2-534, means a final judgment, i.e., a judgment that disposes of all issues, or an appealable interlocutory order, i.e., an order that while not "final," is still appealable pursuant to Md. Code, Cts. and Jud. Proc. ("CJP") § 12-303.[5] First, we note that Rule 1-202(o) defines "judgment" as "any

---

[2] Md. Rule 8-202(a) states: "Except as otherwise provided by this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken."

[3] Md. Rule 2-534 states: "In an action decided by the court, on motion of any party filed within ten days after entry of judgment, the court may open the judgment to receive additional evidence, may amend its findings or its statement of reasons for the decision, may set forth additional findings or reasons, may enter new findings or new reasons, may amend the judgment, or may enter a new judgment."

[4] Md. Rule 8-202(c) allows for certain post-judgment motions, including 2-534 motions, to toll the period of time in which to file a notice of appeal with this Court.

[5] CJP § 12-303 outlines orders in which interlocutory appeals are allowed. Included in the list of appealable orders is: "(3) An order: (iii) Refusing to grant an injunction[.]"

3

order of court final in its nature entered pursuant to these rules." In that respect, "judgment" does not equate to the "final judgment" addressed in Rule 2-602.[6]

Additionally, in *Tierco Maryland, Inc. v. Williams*, 381 Md. 378 (2004), the Supreme Court of Maryland (at the time called the Court of Appeals of Maryland)[7] noted that the phrase, "the judgment" in Rule 2-534 refers to the "particular judgment to which the motion is directed." *Id.* at 398. The Court continued: "The conclusion we draw from the plain language of these rules is that entry of final judgment as to all claims of all parties in a civil case is not necessarily a requirement for the filing of post-judgment motions." *Id.* Further, in *Doe v. Sovereign Grace Ministries, Inc.*, this Court stated that under Rule 8-202(c), when a Rule 2-534 post-judgment motion has been filed within ten days "of the entry of an otherwise final judgment (*or the entry of another appealable order*), the time for filing a notice of appeal is tolled[.]" 217 Md. App. 650, 668 (2014) (emphasis added). We also stated that "[t]he tolling effect of Rule 8-202(c) does not apply to a motion for

---

[6] Md. Rule 2-602, "Judgments not Disposing of Entire Action" states: "Except as provided in section (b) of this Rule, an order or other form of decision, however designated, that adjudicates fewer than all of the claims in an action (whether raised by original claim, counterclaim, cross-claim, or third-party claim), or that adjudicates less than an entire claim, or that adjudicates the rights and liabilities of fewer than all the parties to the action: (1) is not a final judgment[.]"

[7] At the November 8, 2022 general election, the voters of Maryland ratified a constitutional amendment changing the name of the Court of Appeals of Maryland to the Supreme Court of Maryland. The name change took effect on December 14, 2022. *See*, *also*, Md. Rule 1-101.1(a) ("From and after December 14, 2022, any reference in these Rules or, in any proceedings before any court of the Maryland Judiciary, any reference in any statute, ordinance, or regulation applicable in Maryland to the Court of Appeals of Maryland shall be deemed to refer to the Supreme Court of Maryland….").

reconsideration of a *non-appealable* interlocutory order[.]" *Id.* at 669 (emphasis added).

Taken together, these cases clearly show that a "final judgment," as contemplated by Rule 2-602, is unnecessary to toll the time in which to file a notice of appeal, as long as a 2-534 motion contests an appealable interlocutory order.

We are persuaded that the circuit court's denial of Andrews' Motion to Stay was an appealable interlocutory order by virtue of CJP § 12-303(3)(iii). That provision states that a party may appeal from an interlocutory order entered by a circuit court in a civil case where the court refuses to grant an injunction. In *Huertas v. Ward*, 248 Md. App. 187, 207 (2020), we noted that "a request to stay a foreclosure sale, i.e., to prohibit parties from selling a property, was a request for an injunction. Accordingly, the order was immediately appealable to the extent that it denied his request for injunctive relief." (Internal citations omitted). Further, the Supreme Court of Maryland has held that, on an appeal from the ratification of the foreclosure sale (the final judgment), one cannot litigate issues pertaining to the stay.

> [P]rior to the sale, the debtor may seek to enjoin the foreclosure sale from proceeding by filing a motion to enjoin as provided in [the Maryland Rules]. Should a sale occur, however, the debtor's later filing of exceptions to the sale may challenge only procedural irregularities at the sale or the debtor may challenge the statement of indebtedness by filing exceptions to the auditor's statement of account.

*Thomas v. Nadel*, 427 Md. 441, 444 (2012) (citing *Greenbriar Condo v. Brooks*, 387 Md 683, 688 (2005) (explaining that, prior to the foreclosure sale, the debtor had the right to file a motion to enjoin the sale under Rule 14-209, but that after the sale went forward, an injunction was not permissible to overturn the sale, nor were exceptions to the sale filed

5

under Maryland Rule 14-304 appropriate to "upset retroactively a sale properly held"), *superseded by Rule as stated in Thomas v. Nadel*, 427 Md. 441, 444 n.5 (2012)).

Consequently, we shall treat the denial of the motion to stay a foreclosure proceeding as an order final in nature. Thus, Andrews' filing of the Rule 2-534 motion tolled the time for her to file a notice of appeal until the court docketed its order denying her Rule 2-534 motion on August 4, 2021. Her notice of appeal filed on September 2, 2021, was thus timely and Appeal 1018 is properly before us.

The Substitute Trustees also urge dismissal of appeal No. 1553,[8] stating that it is a "*post-sale* appeal seeking to challenge the denial of a Rule 14-211 motion, which is conclusively not allowed." (Emphasis in original). The Substitute Trustees cite *Thomas*, where the Supreme Court of Maryland stated that, in a foreclosure action, following a sale of the property, "the debtor's later filing of exceptions to the sale may challenge only procedural irregularities at the sale or the debtor may challenge the statement of indebtedness by filing exceptions to the auditor's statement of account." 427 Md. at 444. However, this proposition does *not* mean that a failure to limit an appeal to procedural irregularities is a basis for dismissal. Rather, it is a basis for concluding that the appellant has not asserted a substantive challenge to the ratification of the sale—and thus, to rule in the appellee's favor on the merits. Here, Andrews filed a timely notice of appeal contesting

---

[8] The Substitute Trustees also argue that because we are without jurisdiction to hear Appeal 1018, no appellant's brief is properly before us, and we should dismiss Appeal 1553 under Rule 8-502(d) for failing to file an appellant's brief. We need not address this argument as we hold that Appeal 1018 is properly before us.

the denial of her Motion to Stay and subsequent Rule 2-534 motion. The fact that the court ratified the sale of the house[9] does not prevent us from reaching the merits of her appeal. Therefore, Appeal 1553 also does not warrant dismissal.

## II.   MERITS

Andrews challenges the validity of the foreclosure proceedings. Her challenges are grounded in her assertions that: the appellees "repeatedly failed to provide the required pre-mediation documentation as required under the law"; all loss-mitigation options had not been exhausted; the appellees provided affidavits containing false information; and the court failed to recognize the "unclean hands" of the Substitute Trustees. We will address each in turn.

### 1. The Circuit Court Did Not Abuse its Discretion in Concluding that Substitute Trustees Provided Andrews the Proper Pre-Mediation Documents

#### a.  Parties' Arguments:

Andrews argues that the Substitute Trustees did not submit the proper documents detailing Andrews' payment history prior to the parties' scheduled mediation. As a result of this omission Andrews asserts that the circuit court erred in not staying the foreclosure because loss mitigation efforts were still underway. The Substitute Trustees counter that the Office of Administrative Hearings (OAH), which conducts the mediation sessions with

---

[9] The property was sold to U.S. Bank National Association, as successor to the Noteholder. Because the buyer was not a bona-fide third-party purchaser, Andrews did not need to obtain a supersedeas bond to protect her interest. *See Baltrotsky v. Kugler*, 395 Md. 468, 474–75 (2006).

an Administrative Law Judge (ALJ), held the mediation session after two prior attempts failed because the Substitute Trustees had not provided the proper pre-mediation documentation. The third scheduled mediation session went forward and the ALJ who was conducting the session did not find that there were any deficiencies with the documents that Andrews was provided. Further, Andrews had the benefit of having the lender twice review her loan for a modification. During that process the lender provided her with several documents that apprised her of her financial status in relation to the loan at issue. Thus, according to the Substitute Trustees, by the date that mediation went forward, Andrews had the information that was required under the statute. Consequently, the court did not abuse its discretion in denying Andrews' motion to stay on this ground.

### b. Standard of Review

Under Md. Rule 14–211(a)(1), a borrower may petition for an injunction to stay a foreclosure sale of property and for dismissal of the foreclosure action. Rule 14–211(b)(1) provides:

> (1) Denial of Motion. The court shall deny the motion, with or without a hearing, if the court concludes from the record before it that the motion:
> (A) was not timely filed and does not show good cause for excusing non-compliance with subsection (a)(2) of this Rule;
> (B) does not substantially comply with the requirements of this Rule; or
> (C) does not on its face state a valid defense to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action.

Rule 14–211(a)(3)(B) provides that the motion shall be (1) under oath or supported by affidavit and (2) "state with particularity the factual and legal basis of each defense" to the validity of the lien or the right to foreclose.

Denial of a motion to stay is reviewed for abuse of discretion. *Fishman v. Murphy ex rel. Estate of Urban*, 433 Md. 534, 546 (2013). As our Supreme Court has held, we will reverse under this standard if we determine that "no reasonable person would take the view adopted by the [trial] court[ ]." *Aventis Pasteur, Inc. v. Skevofilax*, 396 Md. 405, 419 (2007). We have found abuses of discretion where the trial court ruling was "clearly against the logic and effect of facts and inferences before the court[ ] ... or when the ruling is violative of fact and logic." *Fishman*, 433 Md. at 545.

### c. Analysis

In a foreclosure action in Maryland, a borrower may request loss mitigation mediation with the secured party seeking foreclosure under Maryland Code Annotated, Real Property ("RP") Article § 7-105.1(j)-(l). In compliance with RP § 7-105.1(l) the OAH notice required the lender to provide:

- Borrower's payment history
- Correspondence log of account activities
- Separately as to each loss mitigation option considered for the borrower, documentation of the basis for denial including:
  - Specific data inputs and their sources
  - An explanation of each specific factor relied upon
  - Relevant portions of investor guidelines
  - Property valuation, if any

It is undisputed that the loan servicer, PHH/NewRez ("NewRez"), submitted a one page "Customer Account Activity Statement" as their pre-mediation documents. This document seemingly was deficient because it:

- Failed to provide the borrower's payment history
- Failed to contain the correspondence log of account activities
- And it failed to contain the required loss mitigation options

Andrews sent to NewRez a letter titled "Notice of Error" alerting them that she did not have all of the necessary documents before the mediation. The record appears to confirm that NewRez did not provide the proper pre-mediation documents to Andrews before the September 16, 2019 mediation, because the ALJ postponed the mediation session to October 17, 2019. According to Andrews, until NewRez responded to her Notice of Error, there could be no foreclosure sale under federal law.[10]  The October 17 mediation session

---

[10] Andrews cites to 12 C.F.R. § 1024.35(e)(3)(i)(B), part of the Real Estate Settlement Procedures Act (RESPA), which states: "In general. A servicer must comply with the requirements of paragraph (e)(1) of this section [which outlines responding to notice of error]: Prior to the date of a foreclosure sale or within 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the notice of error, whichever is earlier, for errors asserted under paragraphs (b)(9) and (10) of this section."

She also cites to § 1024.35(f)(2) which states: "Error asserted before foreclosure sale. A servicer is not required to comply with the requirements of paragraphs (d) and (e) of this section for errors asserted under paragraph (b)(9) or (10) of this section if the servicer receives the applicable notice of an error seven or fewer days before a foreclosure sale. *For any such notice of error, a servicer shall make a good faith attempt to respond to the borrower, orally or in writing, and either correct the error or state the reason the servicer has determined that no error has occurred.*"

was also postponed. But mediation went forward on the third scheduled date, December 4, 2019. Afterward, the ALJ filed a report stating that mediation resulted in no agreement.

At the conclusion of the May 11, 2021 hearing on the motion to stay, in its oral ruling the circuit court noted that on one of the forms the ALJ submitted after the December 4 mediation session, the ALJ could have noted that NewRez had not submitted the proper pre-mitigation documents to Andrews, but the ALJ made no such notation. On the same form, the ALJ could also have noted that Andrews failed to provide documents needed for mediation but, similarly, the ALJ made no such notation. The circuit court concluded that because the ALJ did not postpone the mediation because neither the lender nor Andrews failed to provide required documents, the mediation properly went forward. Further, the court found that Andrews and NewRez had reviewed several potential loan modifications, but none were accepted by NewRez. The court found that because NewRez followed the applicable federal and state statutes before foreclosing and mediation was unsuccessful, by virtue of Rule 14-209.1(f)(2),[11] the lender could properly begin foreclosure proceedings. Consequently, the court denied Andrews' motion to stay.

We conclude that the circuit court did not err for several reasons. First, it does not seem unreasonable for the court to have relied on the ALJ's finding that NewRez and Andrews both had the necessary documentation prior to mediation. Andrews points to no authority in her brief or at oral argument that suggests that the circuit court was required to

---

[11] Md. Rule 14-209.1(f)(2) provides that "[i]f the postfile mediation does not result in an agreement, the secured party may advertise the sale, subject to the right of the borrower to file a motion pursuant to Rule 14-211 to stay the sale and dismiss the action."

undertake an independent review of the pre-mitigation documents; our research revealed no such authority. Consequently, we determine that it was not unreasonable for the court to have relied on the factual determinations of the ALJ, a disinterested third party. Second, there is sufficient documentation in the record, discussed more fully in the next section of this opinion, to suggest that Andrews did, in fact, receive the documentation required under RP § 7-105.1(l) when NewRez was considering her separate proposals for a loan modification in January and September 2019. The record reflects that NewRez sent Andrews a 12-page complete account history (beginning July 2011), when it considered her loan modification requests. The OAH's notice to the lender required the lender to provide the historical documentation for the loan ahead of mediation under RP § 7-105.1(l), "if not already provided." The record suggests that NewRez satisfied the documents requirements with the 12-page account history it had previously provided to Andrews. Finally, the supposed lack of documentation of which Andrews complains belies the fact that mediation went forward when it had not on two prior occasions. On those occasions the ALJ had determined that the documentation was missing. The ALJ made no such finding at the time of the third and final mediation. On this record, we conclude that the court did not abuse its discretion in denying the stay on the ground that Andrews did not have the necessary documents prior to the December 4, 2019 mediation session.

2. **The Circuit Court Did Not Err in Denying the Motion to Stay Based on Andrews' Claim that Her Loss-Mitigation Options Had Not Been Exhausted**

   a. **Parties' Arguments**

Andrews requested that NewRez modify her loan and it declined. Andrews' position is that under 12 CFR § 1024.41(i), a section of the Real Estate Settlement Procedures Act (RESPA) that deals with loss mitigation procedures,[12] NewRez was required to consider her loan modification request because this was the first such request that Andrews had submitted to NewRez after it took over as servicer of the loan. Substitute Trustees claim that the application submitted and denied by NewRez on September 12, 2019 is not covered by RESPA as the borrower only receives "one bite of the apple" for a modification covered by RESPA. Substitute Trustees argue that Andrews had previously submitted a loan modification to Ocwen, NewRez's predecessor, before merging with them. Ocwen had denied the previous loan modification request. Even so, Substitute Trustees maintain that NewRez, in fact, considered Andrews' modification request, giving her a "second bite at the apple," but deemed her unqualified because the new loan would not reduce her monthly mortgage payment by at least $0.01.

### b. Analysis

After congressional passage and President Richard Nixon's signature, RESPA became effective on June 20, 1974. 12 U.S.C. § 2601, et seq. provision 12 C.F.R. Later, in 2010, Congress enacted the Dodd–Frank Wall Street Reform and Consumer Protection Act, thereby granting rule-making authority under RESPA to the Consumer Financial Protection Bureau (CFPB). Pub.L. 111–203 (July 10, 2010), 12 USC §§ 5491, 5511, 5512, 5513; 15 USC § 1639d. Subsequently, the CFPB issued a final rule amending Regulation

---

[12] Loss mitigation is the process in which borrowers and lenders try to create a plan to avoid foreclosure. See hud.gov/topics/avoiding foreclosure.

X of RESPA, effective January 10, 2014. One of the specific provisions of Regulation X at issue is subsection 1024.41(g), governing loss mitigation, which provides:

> Prohibitions on foreclosure sale. If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale.

12 C.F.R. § 1024.41(g) (2014). Additionally, 12 C.F.R. § 1024.41(i) states:

> A servicer must comply with the requirements of this section for a borrower's loss mitigation application, unless the servicer has previously complied with the requirements of this section for a complete loss mitigation application submitted by the borrower and the borrower has been delinquent at all times since submitting the prior complete application.[13]

As Substitute Trustees correctly point out in their brief, the purpose of subsection (i) is to "prevent[] borrowers from bringing actions for violations of loss mitigation rules if they have already availed themselves of the loss mitigation process once." *Philips v. Wells Fargo Bank, N.A.*, No.3:17-cv-00519-JAG, 2018 U.S. Dist. LEXIS 16995 at *4. *See also Trionfo v. Bank of Am., N.A.*, No. JFM–15–925, 2015 WL 5165415, at *4 (D. Md.

---

[13] An official interpretation of 12 C.F.R. § 1024.41(i) states that:

> Servicing transfers. Section 1024.41(i) provides that a servicer need not comply with § 1024.41 for a subsequent loss mitigation application from a borrower where certain conditions are met. A transferee servicer and a transferor servicer, however, are not the same servicer. Accordingly, a transferee servicer is required to comply with the applicable requirements of § 1024.41 upon receipt of a loss mitigation application from a borrower whose servicing the transferee servicer has obtained through a servicing transfer, even if the borrower previously received an evaluation of a complete loss mitigation application from the transferor servicer.

As will be discussed, NewRez is not a transferee servicer of Ocwen.

14

Sept. 2, 2015), *appeal dismissed*, No. 15–2068 (4th Cir. Jul. 5, 2016) (observing that the statute applies only to first-time applicants).

Andrews' argument is that NewRez, the successor servicer, failed to properly consider her request for a loan modification under RESPA. Specifically, she asserts that under 12 C.F.R. § 1024.41(d) NewRez did not state the "specific reason each modification option was denied." Further, Andrews claims that NewRez "failed to name the purported investor of [her] loan as required by C.F.R.§ 1024,41(g)(1)." Additionally, she raises other RESPA violations but cites no statutory authority to support those claims.

A borrower may request loss mitigation consideration from the lender in the form of a loan modification, but it need only be accomplished once under 12 C.F.R. § 1024.41(i). The record developed in this case reveals that after her February 2, 2018 default, Ocwen, her loan servicer at the time, considered Andrews' request for a loan modification as referenced in the multi-page account history that Ocwen provided to Andrews. Neither party's appendix or the record extract has a copy of Ocwen's denial letter to Andrews, but in their briefs both parties acknowledge that Ocwen considered and denied Andrews' loan modification request in January of 2019. As part of Ocwen's consideration of her loss mitigation options, Ocwen sent to Andrews her account payment history, a 12-page spreadsheet which included among 16 columns of entries, the loan's principal and escrow balance, what payments were received from Andrews and when they were received, what interest was applied, in addition to other information. This document provided Andrews with ample evidence of her "payment history" and a "log of account activities" months before the December 4, 2019 mediation.

The record also shows that on May 31, 2019 Ocwen merged "with and into" PHH, the surviving corporation being "PHH Mortgage Corporation." NewRez is a subsidiary of PHH.[14] The question to be considered is whether NewRez is a service transferee under RESPA and as a separate entity from Ocwen was obligated to provide loss mitigation to Andrews. Mortgage servicing transfers are addressed in 12 C.F.R. § 1024.33(b)(2), which states:

> Certain transfers excluded.
>
> (i) The following transfers are not assignments, sales, or transfers of mortgage loan servicing for purposes of this section if there is no change in the payee, address to which payment must be delivered, account number, or amount of payment due:
> …
> (B) **A transfer that results from mergers** or acquisitions of servicers or subservicers.

(Emphasis supplied). Consequently, Ocwen and NewRez are not different loan servicers under RESPA requiring NewRez to undertake a second round of loss mitigation under 12 C.F.R. § 1024.41(i), as Andrews asserts.

Additionally, there are documents in the record supplied by both parties that show that NewRez again considered Andrews for a loan modification in September 2019 but

---

[14] "New Residential Investment Corporation has reached an agreement with Ocwen Financial Corporation to transfer the subservicing of agency loans currently subserviced by PHH Mortgage Corporation, a subsidiary of Ocwen, to its NewRez LLC subsidiary.

The transaction will involve PHH transferring the subservicing of approximately $41.8 billion unpaid principal balance (UPB) of agency MSRs, representing approximately 310,000 loans. Transfers are expected to occur during the second and third quarters of this year. After the transfers are completed, New Residential will maintain its subservicing relationship with Ocwen related to the portfolio of non-agency loans currently subserviced by PHH." https://nationalmortgageprofessional.com/news/73981/residential-transfers-agency-subservicing

determined that she was ineligible. NewRez's October 30, 2019 letter to Andrews confirms that it denied her request, in short, because the amount of the total modification would have been greater than 25% of the original loan. The October 30 letter explains in detail why this was the case by citing figures Andrews owed for principal, interest, and escrow expenses for the defaulted loan and comparing what those same figures would be for the new loan. As for Andrews' claim that this letter was deficient, in that it did not sufficiently apprise her of why her loan modification request was denied, we disagree. We independently review NewRez's denial letter and conclude that it explains in detail why the modification was denied, as we note above. As for the other purported RESPA violations Andrews raises in her brief, Andrews failed to assert any RESPA violations in her Motion to Stay, which she was required to do. *See* Md. Rule 14-211(a)(3)(B): "A motion to stay and dismiss shall: state with particularity the factual and legal basis of each defense that the moving party has to the validity of the lien or the lien instrument or to the right of the plaintiff to foreclose in the pending action[.]" Because Andrews failed to include this defense nor did she argue it in the circuit court she is precluded here from raising it on appeal. Rule 8-131(c) ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court").

We conclude that Andrews was twice considered for a loan modification under RESPA when the statute required the servicer to provide such loss mitigation only once. Both modification requests were declined primarily because they would have resulted in a greater than 25% increase in the amount of the original loan, placing the modified loan

17

outside the servicer's guidelines. Accordingly, we determine that loss mitigation was concluded by October 30, 2019. We, therefore, hold that the circuit court did not err in denying the motion to stay based on the ground that loss mitigation was supposedly on-going.

3. **The Circuit Court Did Not Err in Denying the Motion to Stay Based on Andrews' Claim that the Order to Docket the Foreclosure was Supported by False Affidavits**

   a. **Parties' Arguments**

Andrews contends that under Md. Rule 14-207(b)(2), an Order to Docket (OTD) must have an affidavit with the amount of debt owed. The affidavits in this OTD did not comply with Rule 14-207(b)(2) in Andrews' estimation because they did not show fees that the previous servicer Ocwen assessed against Andrews' account and the claimed principal debt does not align with the account history provided by Ocwen. The Substitute Trustees assert that Andrews is complaining that the affidavits do not contain prior service fees and property inspection and valuation fees that Ocwen previously imposed. If NewRez has chosen to not charge Andrews certain fees, then that is NewRez's prerogative and Andrews cannot be heard to complain.

   b. **Analysis**

We agree with Substitute Trustees in that Andrews cites no authority prohibiting a creditor or loan servicer from choosing not to collect certain fees owed. If NewRez chose not to collect the fees previously assessed, then it seems reasonable to us that this decision falls squarely within the discretion of the servicer. Further, declining to collect such fees hardly constitutes a deception, which, requires proof

18

(1) that the defendant made a false representation to the plaintiff,

(2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth,

(3) that the misrepresentation was made for the purpose of defrauding the plaintiff,

(4) that the plaintiff relied on the misrepresentation and had the right to rely on it, and

(5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Nails v. S & R, Inc.*, 334 Md. 398, 415 (1994); *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 601 (D. Md. 2018). Here, there is nothing false or deceptive about NewRez opting not to collect the fees from Andrews.

As to the legitimacy of the claimed balance of her loan, Andrews suggests that her mortgage balance should be based on an Internal Revenue Service 1099 form she had received some time after she was in default. We agree with Substitute Trustees that Andrews' payment obligations are governed by RP §§ 5-103[15] and 5-104[16], and by the Note, Deed of Trust, and any modifications to which the parties agreed. As the record demonstrates, these were documents that she had in her possession. We are unpersuaded that an unsigned mortgage interest statement should be dispositive of her loan balance.

### 4. The Circuit Court Properly Denied the Motion to Stay Based on Andrews' Assertion that Substitute Trustees Had Unclean Hands

---

[15] RP § 5-103 provides that "No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it, or his agent lawfully authorized by writing, or by act and operation of law."

[16] RP § 5-104 provides that "No action may be brought on any contract for the sale or disposition of land or of any interest in or concerning land unless the contract on which the action is brought, or some memorandum or note of it, is in writing and signed by the party to be charged or some other person lawfully authorized by him."

### a. Parties' Arguments

Andrews submits that foreclosure is an equitable procedure, and the Substitute Trustees must demonstrate that the foreclosure has not been marred by fraudulent, illegal, or inequitable conduct. *Mitchell v. Yacko*, 232 Md. App. 624 (2017). She maintains that Substitute Trustees violated RESPA by denying Andrews for a loan modification even though she claims she qualifies for such a modification. Additionally, as previously argued, Andrews asserts that Substitute Trustees provided false information in the OTD affidavits and failed to provide the required pre-mediation documentation. The Substitute Trustees argue that they and NewRez have done nothing fraudulent or illegal in proceeding to foreclosure in this case.

### b. Analysis

The basis of Andrews' allegations of unclean hands rests on her proving the other assertions in this appeal. As we have discussed, none of those arguments has merit. As a result, her cumulative assertion that Substitute Trustees have unclean hands must fail as well. Further, Andrews' reliance on *Mitchell* is misplaced. Andrews cites *Mitchell* for the broad proposition that courts should not "rubber-stamp" foreclosure proceedings, because of the devastating effects an invalid foreclosure proceeding would have on the homeowner. We do not disagree with this general proposition, but, significantly, *Mitchell* concerned allegations of forgery at the time the deed of trust originated. 232 Md. App. at 627. Andrews has not proven fraud, forgery, or other illegality against NewRez. Indeed, Andrews neither disputes that she owes the debt nor that she is in default. Essentially, she asserts that she was entitled to a loan modification on terms favorable to her. As discussed,

Andrews had the benefit of the loan servicer considering two loan modifications. Because of her credit history, the principal amount of the debt, and interest she owed, NewRez concluded that Andrews posed too great a financial risk for a loan modification. Accordingly, on this record, we cannot say that the circuit court abused its discretion in denying Andrews' motion to stay the foreclosure based on her assertion that the Substitute Trustees had unclean hands.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. APPELLANT TO PAY THE COSTS.**